Laramore, Judge,
delivered the opinion of the court:
Plaintiff, a former civilian employee in the Department of Labor Library, seeks to recover back salary from the date of her discharge. She contends that she was unlawfully discharged under the Performance Eating Act of 1950, 61 Stat. 1098, due to alleged irregular procedures followed by the Department of Labor giving her an unsatisfactory performance rating.
*36 The facts regarding plaintiff’s employment, performance rating, and eventual dismissal are fully set forth in the findings of fact and are only alluded to here to the extent necessary.
Plaintiff was first employed by the Navy Department in 1943 and was transferred in 1945 to the Army Medical Library. On August 1, 1955, at her own request, she was transferred from the Army Medical Library to the Department of Labor Library, where she was assigned as a Circulation Librarian, GS-5, to duties at the circulation desk of the Eeaders Service Division.
Shortly after she began work at the Department of Labor Library plaintiff became very unhappy with her assignment and asked to be transferred to the Cataloging Division stating that, while she had no previous cataloging experience, she could learn to do this work and agreed to midertake cataloging training. On September 15, 1955, she was detailed part time to work in the Cataloging Division, and on October 1, 1955, she was assigned to that Division full time.
There followed a series of circumstances relating to plaintiff’s performance rating which are the subject of plaintiff’s petition. However, on October 5, 1956, the Administrative Assistant Secretary of the Department of Labor wrote plaintiff regarding her performance rating and in said letter informed plaintiff as follows:
*****
You are further notified that your removal from the position of Librarian GS-5 is proposed effective not less than thirty days after your receipt of this letter on the basis of your unsatisfactory performance in the interest of promoting the efficiency of the Service. It is charged that you have failed to satisfactorily perform the duties of your position by failing to meet the established standards for your position in regard to both quality and quantity. During the warning period you performed in 328 hours work that a satisfactory employee should have performed within 190 hours. Furthermore, you had an average of 15 percent of serious errors in addition to minor errors, whereas the standards for your position allowed not more than 10 percent of errors.
Under the Act of August 24, 1912, as amended, and Civil Service Commission Regulations, you have the right to answer this charge and proposal to remove in *37 writing and to furnish affidavits in support of your answer. You are given ten calendar days from the date of your receipt of this letter in which you should make your reply which should be addressed to me. If after consideration of your answer to the charges I decide to recommend your removal to the Department of Labor, the Department will consider your answer together with the charges. Pending decision in your case, you will continue on active duty until the Department advises you otherwise.
Plaintiff responded to this letter, but said response was only directed to her performance rating. Again by letter of October 15, 1956, plaintiff complained of the action regarding her performance rating.
There followed a series of correspondence between plaintiff and officials of the Department, all concerning the action taken in giving her an unsatisfactory performance rating.
Plaintiff was given information concerning her right to appeal the performance rating action. She did appeal, and the Performance Rating Board of Review of the Department of Labor, after a hearing, sustained the unsatisfactory rating.
We have purposely omitted specific reference to plaintiff’s complaints regarding any alleged procedural error in plaintiff’s performance rating for this reason — in the October 5, 1956, letter, a part of which is quoted above, plaintiff was notified specifically that her removal from her position as Librarian, GS-5, would be effected 30 days from date of receipt thereof on the basis of her “* * * unsatisfactory performance in the interest of promoting the efficiency of the Service.” She was also advised in said letter of her rights under the provisions of the Lloyd-La Follette Act, 37 Stat. 555, as amended, 62 Stat. 355. This, incidentally, was the Act under which plaintiff’s removal was effected and provides in pertinent part as follows:
No person in the classified civil service of the United States shall be removed or suspended without pay therefrom except for such cause as will promote the efficiency of such service and for reasons given in writing. Any person whose removal or suspension without pay is sought shall (1) have notice of the same and of any charges preferred against him; (2) be furnished with *38 a copy of such charges; (3) be allowed a reasonable time for filing a written answer to such charges, with affidavits ; and (4) be furnished at the earliest practicable date with a written decision on such answer. No examination of witnesses nor any trial or hearing shall be required except in the discretion of tire officer or employee directing the removal or suspension without pay. Copies of the charges, the notice of hearing, the answer, idle reasons for removal or suspension without pay, and the order of removal or suspension without pay shall be made a part of the records of the proper department or agency, as shall also the reasons for reduction in grade or compensation; and copies of the same shall be furnished, upon request, to the person affected and to the Civil Service Commission. This subsection shall apply to a person within the purview of section 14 of the Veterans’ Preference Act of 1944, as amended, only if he so elects.
The petition does not allege any arbitrary or capricious action in connection with plaintiff’s discharge and at the trial plaintiff’s counsel stated that the claim was based on procedural error in her performance rating.
Plaintiff’s reliance on this theory, however, is misplaced. She was not discharged on the basis of her unsatisfactory performance rating, but on the basis of unsatisfactory performance of the duties of the position and for such cause as would promote the efficiency of the service, as provided for in the Lloyd-La Follette Act, supra. Furthermore, as disclosed by the facts, she was given all the notices, protections, and safeguards of the Act and the regulation promulgated thereunder, which provided:
(1) Actions against employees, (i) No employee, veteran or nonveteran, shall be separated, suspended, or demoted except for such cause as will promote the efficiency of the service and for reasons given in writing. The agency shall notify the employee in writing of the action proposed to be taken. This notice shall set forth, specifically and in detail, the charges preferred against him. The employee shall be allowed a reasonable time for filing a written answer to such charges and for furnishing affidavits in support of his answer. He shall not, however, be entitled to an examination of witnesses, nor shall any trial or hearing be required except in the discretion of the agency. If the employee answers the charges, his answer must be considered by the agency. *39 Following consideration oí tbe answer, tbe employee shall be furnished at the earliest practical date with a written decision. In the decision that removal or other adverse action will be taken, the agency shall notify the employee of the reasons for the action and the effective date of the action; also of the right of the employee to appeal to the appropriate office of the Commission and the time limit within which his appeal must be submitted as provided in § 9.106. Copies of the charges, notice of hearing (if any), answer, reasons for removal, or other action shall be made a part of the records of the agency concerned. [5 CFB, 9.102 (1960 Supp.)]
Therefore, since plaintiff’s removal was properly effected under the provisions of the Lloyd-La Follette Act and regulation thereunder, and no instance of procedural error is alleged or proved, this court cannot review the merits of a dismissal action. Eberlein v. United States, 257 U.S. 82; Culligan v. United States, 107 Ct. Cl. 222, cert. denied, 330 U.S. 848; Bryan v. United States, 128 Ct. Cl. 541.
Moreover, plaintiff did not timely appeal the removal action to the Civil Service Commission as was her right. Under these circumstances there is an added reason why plaintiff cannot recover — she did not exhaust her administrative remedy. Having failed to invoke a readily available administrative remedy specifically created by Congress to correct any errors that may exist in an agency’s action, plaintiff cannot now invoke the aid of this court. McDougall v. United States, 138 Ct. Cl. 90; Adler, et al. v. United States, 134 Ct. Cl. 200, cert. denied 352 U.S. 894.
Plaintiff did attempt a delayed appeal to the Civil Service Commission regarding her removal. This appeal was denied by the Appeals and Examining Office of the Civil Service Commission and the Board of Appeals and Beview of the Civil Service Commission. The Board of Appeals and Be-view thoroughly considered plaintiff’s case and stated that there was no evidence presented in support of the contentions of plaintiff that her appeal was delayed by circumstances beyond her control. In this connection, no arbitrary action of the Board is alleged or proved, and we cannot now say that the Civil Service Commission was in error in not accepting plaintiff’s appeal. Furthermore, the evidence does not war *40 rant a bolding that plaintiff bad a reasonable excuse for not making a timely appeal or that extraordinary facts either precluded a timely appeal or warranted a delayed appeal.
Nor can plaintiff now complain about alleged procedural irregularities on the part of the agency in giving her an unsatisfactory performance rating under the Performance Rating Act, supra. As we stated earlier, she was not discharged under that Act, and this court has held many times that the provisions of the Performance Eating Act are not a limitation on the removal of an employee for cause under another and completely different statute (Lloyd-La Follette Act). Atkinson v. United States, 144 Ct. Cl. 585; Misuraca v. United States, 135 Ct. Cl. 387; DeBusk v. United States, 132 Ct. Cl. 790, cert. denied 350 U.S. 988.
For the reasons stated above, plaintiff is not entitled to recover and her petition will be dismissed.
It is so ordered.
Dunfee, Judge; MaddeN, Judge; Whitaeee, Judge; and JONES, Chief Judge, concur.
FINDINGS OF FAOT
The court, having considered the evidence, the report of Trial Commissioner C. Murray Bernhardt, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff is a citizen of the United States and a resident of the District of Columbia.
2. Plaintiff was first employed by the Navy Department in 1943 and was transferred in 1945 to the Army Medical Library. On August 1, 1955, at her own request, she was transferred from the Army Medical Library to the Department of Labor Library, where she was assigned as a Circulation Librarian GS-5 to duties at the circulation desk of the Eeaders Services Division.
3. Shortly after she began work at the Department of Labor Library the plaintiff became very unhappy with her assignment at the circulation desk and asked to be transferred to the Cataloging Division, stating that, while she had had no previous cataloging experience, she could learn to do this work and agreed to undertake cataloging train *41 ing. On September 15, 1955, the plaintiff was detailed part-time to work in the Cataloging Division and, on October 1,1955, she was assigned to that Division full-time. She remained on detail to the Cataloging Division until February 12, 1'956, when she was officially assigned there. The work schedule assigned to her on February 7, 1956 required her to spend 22% hours (65 percent) of the total 35 working hours each week on cataloging, 6% hours on work described as “Arrange and file into supplement”, 4 hours searching, and 2 hours typing.
4. In January 1956 the head librarian, Miss Brickett, had received a request for a rating for plaintiff. The plaintiff was warned informally in February 1956 that her work was unsatisfactory (despite which fact she was transferred officially on February 12), and Miss Brickett intended to give her a 90-day warning of an unsatisfactory rating pursuant to the regulations. This was not done immediately, however, because Miss Brickett was not personally familiar with the formal requirements of the regulations pertaining to 90-day warnings. On May 2, 1956, a private conference was held to discuss plaintiff’s unsatisfactory work record and to warn her that if her performance during a 90-day warning period did not meet the prescribed standards she would be given an unsatisfactory rating. Present at this conference were plaintiff, Miss Brickett who conducted it, Miss Winter, the assistant librarian, and Miss Skartvedt, chief of the Acquisition and Cataloging Division. Also discussed at this May 2 conference were plaintiff’s work assignments and the standards set for them. Plaintiff was given suggestions as to the things she might do to bring her performance up to the requirements for production and accuracy. A typewritten statement dated May 7, 1956, was prepared reflecting what transpired at the conference, and was sent to the plaintiff who signed it acknowledging receipt thereof. The statement was also signed by the others who attended the conference.
5. Pursuant to the Performance Eating Act of 1950, as amended, the Civil Service Commission issued regulations for administration of the Act. Pertinent provisions of Section 2 of the regulations, approved April 4,1955, and entitled *42 “Contents and Operations of Performance Rating Plans”, are as follows:
OUTLINE 0E ACCEPTABLE PLAN
Each performance rating plan approved by the Civil Service Commission should contain the following parts:
* * * * *
(d) Performance evaluation 'procedure — This part should include:
—A description of how job requirements and performance standards are to be established and made known to employees on a current basis;
—An indication by definition or categories of the supervisory officials who are to mate and approve performance ratings and a description of their responsibilities; —A description of the maimer in which evaluation and ratings are to be made;
SPECIFIC REQUIREMENTS
Each performance rating plan approved by the Civil Service Commission, in addition to conforming to the general outline above, must meet certain specific requirements. These are:
Warning before Unsatisfactory ratings — The Performance Rating Act states that “no officer or employee shall be rated unsatisfactory without a ninety-day prior warning and a reasonable opportunity to demonstrate satisfactory performance.” This prior warning should, whenever possible, be in writing and should state:
—Which job requirements the employee is failing to meet satisfactorily;
—What the employee must do to bring his performance up to a satisfactory level within the 90-day period; and
—What efforts will be made to help the employees improve.
Unsatisfactory ratings — Every Unsatisfactory rating must be accompanied by a written statement specifying:
—The facts of the prior warning;
—The efforts made to help the employee improve during the warning period; and
—The reasons for assigning the Unsatisfactory rating. The statement justifying the Unsatisfactory rating *43 should correspond to the job requirements cited in the initial warning. As required by law, an Unsatisfactory rating serves as a basis for removal from the position in which such unsatisfactory service was rendered. This may result in demotion, reassignment or separation. Adverse action following an Unsatisfactory rating is taken in accordance with Section 9.102(a) (1) or part 22 of the Commission’s Regulations.
Bating methods — In rating an employee, an agency may not:
—Use performance requirements (a) not in effect during the rating period; (b) not known to the employee; or (c) which the employee had not been given a fair opportunity to meet;
—Use a rating method or process which is to be kept secret from either supervisors or employees; or
—Require that performance ratings conform to any predetermined distribution or establish any other controls that prevent the fair appraisal of performance in relation to performance requirements.
* ❖ # * *
6. The Department of Labor established a duly approved performance rating plan, which provided in pertinent parts as follows:

Use of Performance Ratings

Frequent informal appraisals of performance by supervisors will be used to keep each employee currently informed of how well his performance is meeting the established requirements. Suitable corrective action, such as on-the-job training, reassignment to other duties, or reapportionment of the workload among employees of the unit, is to be taken where any phases of performance are not up to requirements. Regular formal reports of performance will be used as required by the laws and regulations governing reduction in force and within-grade salary increases.

% Hi % Hi Hi

Responsibility for Ratings

Reports of performance appraisals shall be made by the supervisor who normally gives the employee his work assignments, advises and consults with him during the course of the work, and reviews and approves the work upon completion. Where these supervisory functions are performed currently by more than one .individual, *44 such persons shall consult together in arriving at a suitable report. Eatings of “Satisfactory” will not be subject to review, except on appeal. The heads of bureaus, divisions, and offices, or committees appointed by them, shall be responsible for reviewing and approving or disapproving reports of “Unsatisfactory” performance and for reviewing and recommending approval of reports of “Outstanding” performance to the Department of Labor Incentive Awards Committee. Excepting certain positions to be designated by the Secretary, where authority to review and approve ratings of “Outstanding” is reserved to the Secretary, it shall be the responsibility of the Incentive Awards Committee to review and approve or disapprove a report of “Outstanding” performance, which has been referred to it by the head of the bureau, division, or office, in order (1) to insure that each approved “Outstanding” rating reflects performance all 'aspects of which not only exceed normal requirements but are outstanding and deserve special commendation and (2) to provide departmental recognition of outstanding employees.

Basis of Performance Ratings

Appraisals of performance shall be based on performance requirements of the duties assigned and the performance requirements used in the appraisal process shall be those in effect at the time the performance was rendered. Since it is mandatory under this Plan, in conformance with law, that mutually understood performance requirements be established for all positions, supervisors will be required to define and explain performance requirements to employees; and employees shall be given opportunity to discuss the performance requirements with their supervisors and to suggest changes. * * *

Performance Rating Procedure

♦í» V *1* ifc
(c) An employee may not be rated as “Unsatisfactory” without a prior written warning of at least 90 days and a reasonable work opportunity within the warning period to demonstrate ^‘Satisfactory” performance. This warning should be given in a private conference among the rating supervisor, the next higher supervisor, if possible, and the employee. This conference should be conducted not merely as a compliance with *45 a technical requirement of the law to “warn” the employee of his deficiencies, but as a sincere attempt to ■assist the employee to improve his performance. The discussion at this conference should, as a minimum, include:
1. An explanation of each task on which the employee’s performance will be rated and in which his services fall below standard;
2. A statement of the performance requirements on each of those tasks;
3. Advice as to what the employee must do to bring his performance up to requirements;
4. A warning that his performance will be rated “Unsatisfactory” unless his performance improves to meet the requirements necessary for a higher rating; and
5. A statement that he has the warning period in which to improve his performance so as to justify a higher rating.
At the end of the conference, the employee shall be asked to acknowledge receipt of the warning by signing in triplicate a dated typewritten statement to the effect that on that date the conference was held and including an identification of the phases of performance in which the employee is deficient, a statement of the requirements which he must meet to warrant a rating of “Satisfactory” including advice as to what the employee must do to meet those requirements, and a statement warning him that unless he improves his performance to meet this standard within the warning period, his rating will be reported as “Unsatisfactory.” * * *.
* # % sic #

Impartial Review of Performance Ratings

An employee with a performance rating of “Unsatisfactory” who wishes to appeal the rating may appeal directly to the Department of Labor Board of Beview or he may obtain an impartial review of his rating within the Department. If he chooses to seek an impartial review within the Department, he shall, as the first step, notify his supervisor in writing of his intention to seek such review. The supervisor shall furnish a written statement indicating wherein the performance is unsatisfactory, the facts of the prior warning, and the efforts made to help the employee bring his perform- *46 anee up to a satisfactory level. The employee may answer in writing. These exchanges constitute the record which shall be forwarded through supervisory channels for review by the head of the bureau, division, or office, or a committee appointed by him for that purpose, and referral with recommendation to the Departmental Performance Hating Committee appointed by the Secretary, which shall be representative of management viewpoint and employee viewpoint, for final decision. If he is dissatisfied with the decision of the Committee, he may appeal to the Board of Review within 30 days after receipt of notice of the decision.
7. (a)[1] The performance ratings of persons employed as cataloguers in plaintiff’s capacity in the Department of Labor Library were based upon the factors of speed and accuracy in performing the various specialized functions peculiar to the occupation. Some phases of cataloging are more complex than others and take more time and talent, but a person of average ability should be able to master the mechanics and reach an acceptable rate of production (as distinguished from accuracy of product, which is a more subjective problem) after 3 months of training.
(b) When the plaintiff was first detailed to the Catalog Division in September 1955 she was given a job description sheet. This job description specified the work assignments of the job to include (1) the cataloging of new titles, monographs 'and simple serials, (2) cataloging more difficult serial additions such as those in foreign language form, etc., (3) searching new and duplicate material, (4) arranging catalog cards for filing, and (5) filing cards. The job description gave further details as to each one of the separate categories of work assignments enumerated above, specified as to the cataloging duties that “returns for correction should not average more than 10 percent”, and prescribed a 5 percent standard of accuracy for filing catalog cards. As to each category of work provision was made on the job description to describe the time to be taken, but as of September 1955 *47 these time standards had not been fully developed and the job description given to the plaintiff at that time did not specify time standards.
(c) The library officials were making a study of the average amount of time taken by their existing catalogers to perform each of the separate functions contained in the job description, so as to arrive at time standards to be incorporated into the ultimate job description. The existing catalogers on whose production the study was based were experienced in their work. Each cataloger was required to file a daily work sheet with her supervisor at the end of each day, along with the work itself. The daily work sheet would disclose the amount of time taken for cataloging each separate item and the total number of items. The supervisor would examine the work sheets and would determine the number of errors committed by reviewing the work product for that day.
(d) Based upon the results of the study made as described in the preceding paragraph, sometime between September 15, 1955, and May 2,1956, a “Statement of Performance Standards” was put into effect by Miss Brickett, the librarian, for application to all catalogers in the library. She had not cleared this standard in advance with the Departmental Personnel Division, but there is no reason to believe that it was not a fair and objective effort on her part to prescribe standards for cataloging work in the library that could be met by persons of average ability and application. This “Statement of Performance Standards” was in substance a refined and revised version of the job description sheet which the plaintiff had been given on September 15, 1955, and which has been described in paragraph (b) of this finding. However, it provided definite time standards to apply to each category of the work assignments. The time standards varied depending on the type of work assignment and the amount of time which experience had shown such assignment should take to complete. It was not always possible to determine in advance exactly what category of work assignment a particular cataloging item would fall into, for sometimes the complexity did not become apparent until mid-performance. The “Statement of Performance Standards” also *48 provided that errors could not exceed 10 percent in cataloging assignments, and other standards of accuracy were provided for in connection with non-cataloging duties.
(e) There is no definite evidence that the time standards contained in the “Statement of Performance Standards” was ever made known to the plaintiff until she was given a copy of the document at the 90-day warning conference of May 2, 1956, referred to in finding 4, supra. However, a detailed record of the plaintiff’s daily work sheets had been maintained during the period October 1955-March 1956, and a breakdown of her production and errors during that period was attached to the May 7, 1956 statement reflecting the proceedings at the May 2 conference mentioned in finding 4, supra. This analysis showed, in general, that during the period covered the plaintiff had taken 500 hours to perform duties which, collectively, were required to be performed under the “Statement of Performance Standards” in 396 hours. It also showed that in February and March 1956 the plaintiff had made 154 errors in cataloging 427 items, some errors being more serious than others. This was considered to be an error rate of 36 percent, but it does not necessarily mean that 154 out of the 427 items cataloged by the plaintiff in that period were found to be in error. For example, if she made several errors on one item (an item being a catalog card on which she would make various entries) , all of the errors on that one item would be included in the total of 154 errors counted. Miss Brickett was told later by statisticians with the Department of Labor that her method of counting errors was statistically wrong, and the record does not reveal what the plaintiff’s error percentage for February and March 1956 would have been if they had been counted in some other way. Miss Skartvedt, chief of the Cataloging Division, had furnished the above data to Miss Brickett, and each month furnished Miss Brickett with a report of the plaintiff’s performance in terms of production and accuracy. During the first few months of her employment while she was learning the job, an effort was made to give the plaintiff the relatively simpler cataloging tasks.
8. Under Miss Brickett’s general supervision as librarian, the Department of Labor Library was organized into 2 *49 divisions, one of which, was the Acquisitions and Cataloging Division which was headed by Miss Skartvedt, and the other was the Headers Services Division. While the plaintiff was employed in the Cataloging Division Miss Skartvedt reviewed her book cataloging work daily, and every few days pointed out to plaintiff the errors made, told her what she was doing wrong and what she should do to improve her work. Miss Skartvedt also kept a detailed record of plaintiff’s work and was the person most qualified to rate the plaintiff, which she did. A Miss Croft was the plaintiff’s immediate supervisor in the Division, according to the organization chart.
9. The following letter dated October 5, 1956, was sent to the plaintiff by the Administrative Assistant Secretary of the Department of Labor:
This is to advise you that a recommendation for an “Unsatisfactory” rating for you has been formally recommended to me by your supervisor 'and approved by me and effective today.
You received a warning in writing on May 2, 1956, more than ninety days prior to the effective date of this rating. Every effort was made to help you improve your performance during the rating period including daily counsel and direction by your supervisor. You failed however to satisfactorily perform the duties of your position in that your production during the rating period was below satisfactory standards and your percent of serious errors exceeded the reasonable allowance for errors established as a performance standard. A copy of the performance standards and a report of your performance is attached.
You have a right to request an impartial review of this rating by the Departmental Performance Eating Committee, Boom 3113, U.S. Department of Labor. This request must be submitted within five days 'after your receipt of this notice. If you do file for a review of this rating by the Departmental Performance Rating Committee, you are allowed five additional days in which to submit your answer to this rating in writing. If you are dissatisfied with the decision of the Departmental Performance Eating Committee, you may appeal to the Performance Rating Board of Review at the Civil Service Commmission within thirty days after receipt of the Committee’s decision. If you prefer not to request a review of your rating by the Departmental *50 Performance Hating Committee, you may appeal this rating directly to the Performance Eating Board of Eeview by filing your appeal within thirty days after receipt of this letter. Such an appeal should be addressed to the Chairman of the Performance Eating Board of Eeview of the Department of Labor, U.o. Civil Service Commission, Washington 25, D.C.
You are further notified that your removal from the position of Librarian GS-5 is proposed effective not less than thirty days after your receipt of this letter on the basis of your unsatisfactory performance in the interest of promoting the efficiency of the Service. It is charged that you have failed to satisfactorily perform the duties of your position by failing to meet the established standards for your position in regard to both quality and quantity. During the warning period you performed in 328 hours work that a satisfactory employee should have performed within 190 hours. Furthermore, you had an average of 15 percent of serious errors in 'addition to minor errors, whereas the standards for your position allowed not more than 10 percent of errors.
Under the Act of August 24, 1912, as amended, and Civil Service Commission Eegulations, you have the right to answer this charge and proposal to remove in writing and to furnish affidavits in support of your answer. You are given ten calendar days from the date of your receipt of this letter in which you should make your reply which should be addressed to me. If after consideration of your answer to the charges I decide to recommend your removal to the Department of Labor, the Department will consider your answer together with the charges. Pending decision in your case, you will continue on active duty until the Department'advises you otherwise.
10. By letter dated October 8,1956, the plaintiff responded as follows to the Administrative Assistant Secretary of the Department of Labor:
This is in response to your letter of October 5 in regard to my “Unsatisfactory” efficiency rating.
The following statements do not constitute my full answer to the charges, but I think you should know that the evidence cited is not sufficient to support this rating nor do I believe that a Eating Board would accept it for review since it is incomplete. I can cite records which, if properly interpreted, I believe will convince *51 you that this is true. Miss Brickett also has these records in her files.
I have repeatedly urged Mr. Anderson to advise Miss Brickett that she could not support her claim and I believe he must have tried to dissuade her, considering the evidence I verbally laid before him. It is regrettable that he was not successful, as my year in the Labor Department library has been most difficult. Much unpleasantness could have been avoided and the matter settled long ago.
I make these statements advisedly by reason of knowledge gained in .my many years of qualified librarianship: 15 years in Public and 11 years in Government libraries.
You may want to review the records before I make my formal statement within the ten day period.
11. By letter dated October 15, 1956, the plaintiff again wrote to the Administrative Assistant Secretary as follows:
I do not understand how the copy of the Performance standards and the copy of the Performance report, which were enclosed with your letter of October 5, 1956, can in themselves be interpreted as evidence of unsatisfactory performance in the Labor Department library. The figures are an evaluation of my daily work sheets to Miss Skartvedt. It seems entirely inadequate to use these figures alone, since they take into account only one segment of my work — cataloging.
If the 328 hours cited in the compilation of the work sheets are based on 90 calendar days, or 66 work days, this would leave an average of from three to four hours a day unaccounted for, that is, the additional duties assigned to me of typing, filing and searching, which are also library techniques, were not evaluated.
Is a performance rating in the Labor Department evaluated on all elements of a day’s work? If so, why were approximately three to four hours a day omitted in my Performance record?
12. By memorandum dated October 25,1956, Miss Brickett advised the plaintiff as follows concerning plaintiff’s unsatisfactory performance in the three month May-July 1956 period.
This is in reply to your question as to how I arrived at the figure fifteen as the percentage of errors made during the May-July period.
*52 You performed 653 units of work as enumerated below. There were 96 errors which we scored as serious in our opinion. Fifteen percent of 653 is 88.95, hence 15%. Although extra time was allowed you for typing the original catalog card, the card is an integral part of the cataloging operation and we did not count typing errors.
In addition there were many others which could have been included since the standards do not stipulate serious errors.
Attached is a list of the errors included in the 96 and also a list of 108 of the others which were not included.
Units of work performed
30 new titles
104 difficult serial additions
480 simple serial additions and added copies
4 recataloging
35 analytics
653 total
13. By letter dated November 1, 1956, the Administrative Assistant Secretary advised the plaintiff hr part as follows:
In your letter of October 15, 1956, you questioned the fact that your performance rating was based upon 328 hours of work in 90 calendar days since this “would leave an average of from 3 to 4 hours a day unaccounted for.” You asked if a performance rating in the Department of Labor was evaluated on all elements of a day’s work. During the 90 calendar days on which you were rated there were 64 working days, or 512 hours. Of these you were absent 67, making a total of 445 hours actually worked during this period. Your position is that of Librarian GS-5 and your major assignment is that of classifying and cataloging work in the Department of Labor Library. The duties you perform of filing, searching, and typing are only incidental to your position. The information which was furnished to you concerning your performance was based upon your major responsibility which occupied 75 percent of your work time. Failure to perform these duties satisfactorily is the basis of your ‘Unsatisfactory” rating.
While your letters did not indicate the precise nature of your appeal, I am accepting them as your answer to the charges preferred as the basis of your proposed removal and as your request for an impartial review of your “Unsatisfactory” performance rating. I have for *53 warded your letters to the Departmental Performance Eating Committee for a review of this rating by that Committee. When this Committee completes its review, you will be notified in writing of their decision. At that time a final decision will be made by the Department concerning your removal. You will continue to occupy your position until further notice.
14. By letter dated December 17, 1956, plaintiff was notified by the Chairman of the Departmental Performance Eating Committee that the Committee had unanimously sustained the rating of “unsatisfactory” given by her supervisor and advised further as follows:
You have the right to appeal this rating directly to the Performance Eating Board of Eeview at the Civil Service Commission by filing an appeal within thirty (30) days after receipt of this letter. Such an appeal should be addressed to the Chairman of the Performance Eating Board of Eeview of the Department of Labor, U.S. Civil Service Commission, Washington 25, D.C.
15. By letter dated December 26,1956, the Administrative Assistant Secretary notified the plaintiff as follows:
On October 5, 1956, I notified you of your proposed separation from the Department of Labor on the basis of your unsatisfactory performance in the interest of promoting the efficiency of the Service. You replied on October 8 and on October 15,1956. I postponed action on your proposed separation pending decision on your request for an impartial review of your rating by the Departmental Performance Eating Committee.
I have now been advised that the Departmental Performance Eating Committee has unanimously sustained your performance rating of “Unsatisfactory.” I understand the Chairman also notified you of your further right of appeal of your performance rating to the Performance Eating Board of Eeview at the Civil Service Commission.
This is to advise you that after full consideration of the charges contained in my letter of October 5, 1956, and your replies of October 8, October 15, and November 26,1956, the Department has approved my recommendation for your separation on the basis of the charges stated in my letter of October 5,1956, finding that your answers did not disprove the charges. Accordingly, you are notified that you will be removed at the close of business on December 31,1956.
*54 You will continue on active duty until the effective date of your removal and you will receive a lump sum payment for any annual leave time remaining to your credit on that date.
This is a notice of adverse decision under the terms of section 9.102 of the Civil Service Regulations. You are hereby notified of your right to appeal this decision in writing to the Chief, Appeals Examining Office, Bureau of Departmental Operations, XJ.S. Civil Service Commission, Washington 25, D.C. Your appeal must reach the indicated office within ten (10) days after the effective date of your removal.
However, the Commission will investigate your removal only if you establish a prima facie case that:
(1) The procedure prescribed by the Commission under section 9.102(a)(1) has not been followed (regardless of other allegations); or
(2) The removal was made for political reasons, except as may be required by law, or resulted from discrimination because of marital status or physical handicap.
The Commission will not investigate or review the sufficiency of the reasons for this action nor will it investigate an allegation of discrimination because of race, religion, color, or national origin. Procedure for obtaining a review of such an allegation is provided in General Order No. 40.
16. By letter dated January 9, 1957, plaintiff’s attorney forwarded plaintiff’s appeal to the Performance Rating Board of Review of the Civil Service Commission.
17. On March 7, 1957, the Performance Rating Board of Review of the Department of Labor held a hearing relative to plaintiff’s appeal. By decision dated March 14,1957, the Board of Review advised plaintiff as follows:

Summary of Facts

After thorough consideration of all the facts presented by the appellant and the Department, both orally and in writing, the Board of Review finds that:
1. Appellant was employed August 1, 1955 as Circulation Librarian GS-5, Department Library, Office of the Secretary, Department of Labor. Her appointment was made by transfer from another Government Department.
*55 2. From August 1, 1955 until September 15, 1955, appellant, in addition to circulation work was assigned from three to four hours daily on periodical work. On September 15, 1955 appellant was detailed part time to cataloging work to which she was assigned full time on October 1, 1955. Appellant served on detail to the cataloging work until February 12, 1956, when a personnel action — Form 50 — was processed officially assigning her to position identified as No. 311 in the Division of Acquisitions and Cataloging of the Library.
3. Appellant served as one of three GS-5 Librarians occupying identical positions in the Division of Acquisitions and Cataloging. Appellant’s duties were described generally to perform simple classifying and cataloging work in the Department’s Library. Performance requirements for her position were defined and made known to her on February 2, 1956. The primary tasks were shown as: (1) Catalogs new titles (monographs and monographs in series) and simple serials, presenting few problems in establishing entries or in determining classification and subject headings; (2) Catalogs the more difficult serial additions, such as those in foreign languages or serials requiring additional notes or cross references; and (3) Recatalogs, making changes as directed in entry, classification, or physical description — includes work on books or cards or both.
4. In accordance with the law and the regulations that no employee be rated unsatisfactory without a ninety-day prior warning and an opportunity to demonstrate satisfactory performance, appellant was issued a formal warning notice May 2, 1956. This notice included discussion of her work assignments, the standards set for meeting them and wherein she was not meeting the requirements. Appellant’s particular failures pointed to her inaccuracies and low production. On October 5, 1956, appellant was notified that her rating was UNSATISFACTORY.
5. Appellant contended that she transferred to the Department of Labor with the understanding that she was to be assigned as Reference Librarian. Appellant’s placement is not a matter within the jurisdiction of a statutory Performance Rating Board of Review. The Board’s decision in this appeal is confined to the performance rendered in the position appellant was employed to perform.
6. The Board found, based on the information and evidence presented, that appellant was fully aware of the *56 requirements expected in the position she occupied, and the seriousness of her situation if she did not meet them. Following her initial assignment in the Circulation Section, appellant accepted an assignment in the Acquisitions and Cataloging Section where appraisal of her services resulted in an UNSATISFACTORY performance rating. After issuance of the warning notice appellant discussed other job possibilities with the Department Librarian and members of the Personnel Office.
Y. Standards of performance for any position are established by the employing agency. Even after the issuance of the warning notice the amount of work appellant completed was shown to.be extremely low and the percentage of errors high. Appellant’s errors were recurring and attributed to carelessness. Such errors were shown to include failure to properly record call numbers, make proper notations, postings, and note change of titles. All errors appellant made were returned to her for correction. In this connection it was pointed out that she little heeded the advice given at the time of the warning notice: (1) to try and overcome being nervous and tense; (2) when confronted with something not understood to ask for assistance rather than try to figure it out; (3) if necessary to write out instructions given, and (4) when material was returned for correction to correct it completely the first time. Each day appellant accounted for her time according to the tasks she performed so at all times she should have been aware of her progress in terms of the requirements expected.
8. The Board found from the evidence as a whole no showing that prejudice or bias had entered into the rating, and no evidence to change the assigned rating. There was a distinct showing that appellant should have thoroughly understood the kind and level of work she was being employed to perform.

Decision

On the basis of the above findings, the Board of Review renders the following decision :
The performance rating of “UNSATISFACTORY” is sustained.
This was the first hearing of such a nature that the Board of Review had had.
18. After receipt of the adverse decision of the Performance Rating Board of Review of the Department of Labor *57 referred to in the preceding finding, the plaintiff sought the assistance of Senator Alexander Wiley of the United States Senate. Senator Wiley received the following advice dated April 17, 1957, from the United States Civil Service Commission which he passed on to the plaintiff:
Procedures under which employees may appeal their performance ratings are established by the Performance Eating Act of 1950. There is no further appeal to the Civil Service Commission or to any administrative body from a decision rendered by a statutory Board of Eeview. * * *.
19. By letter dated February 26, 1958, a new attorney for the plaintiff requested the Civil Service Commission to grant plaintiff a delayed appeal of her suspension and removal from the Department of Labor Library on the grounds of procedural errors. The request was denied on March 10, 1958 by the Chief of the Appeals and Examining Office of the Civil Service Commission. The plaintiff on March 12, 1958, appealed this last denial to the Chairman of the Board of Appeals and Eeview of the Civil Service Commission. By letter dated March 31, 1958, the Chairman of the Board of Appeals and Eeview of the Civil Service Commission advised the plaintiff’s counsel as follows:
This is in reply to your letter of March 12, 1958 appealing, in behalf of Miss Gertrude Hutton, a non-veteran, from the decision of the Commission’s Appeals Examining Office that her appeal against the action of the Department of Labor in removing her from the position of Librarian, effective December 31, 1956, was unacceptable for adjudication because not timely filed.
The Board of Appeals and Eeview has considered your statements and has examined the appellate record. According to your letter of February 26, 1958, Miss Hutton was advised fully and correctly as to the various avenues of appeal which were open to her, including specific forms of address and the time limit for appeal in each case. However, she chose to file a performance rating appeal, and did not file an appeal from the separation action until approximately fourteen months after the expiration of the time limit therefor.
It is apparent from the above that the decision of the Commission’s Appeals Examining Office not to accept your initial appeal in her behalf was correct on the basis of information available. You have furnished no evi *58 dence or argument to support a conclusion that circumstances beyond Miss Hutton’s control prevented the filing of the appeal before February 28, 1958. To the contrary, it appears that her delay was occasioned by her choice of a different course of action. Under the circumstances there is no valid justification for waiving the time limit in her case and the decision of the Appeals Hxa.rmning Office declining to accept a delayed appeal in her behalf must be, and is, hereby affirmed.
CONCLUSION OP LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover, and her petition is therefore dismissed.

 The petition did not allege arbitrary and capricious action in connection with plaintiff’s discharge, and at trial plaintiff’s counsel stated that the claim was based on procedural error. The contents of finding 7, therefore, are included because plaintiff contends they indicate a procedural irregularity and not in support of any contention of arbitrary and capricious action.