Whitaker, Judge,
delivered the opinion of the court:
This is a suit to recover salary for the time during which plaintiff was removed from his position because the head of his department held that there were reasonable grounds to believe he was disloyal and because the Loyalty Review Board of the Civil Service Commission held these charges were unwarranted and unjustified, and ruled that he should be restored to his position.
The parties have entered into a stipulation of facts, which is all of the evidence before us. This shows that plaintiff was honorably discharged from the Army of the United States on August 27, 1943. Later, he was appointed an Electrician, third class, at the New York Naval Shipyard, and on January 28,1946, was covered into the classified Civil Service.
On December 8, 1947, plaintiff was served with charges, which alleged, among other things, that he was a registered member of the Communist Party and that it was proposed to remove him from his position. On December 12, 1947, he was suspended without pay. Plaintiff replied in writing to the charges preferred, but on December 29,1947, the Commander of the New York Naval Shipyard notified plaintiff that he would be removed from his position on the grounds of disloyalty, subject to his right of appeal. He took an appeal to the Secretary of the Navy, who affirmed the order of removal.
Plaintiff appealed from the decision of the Secretary of the Navy to the Loyalty Review Board of the Civil Service Commission, which held that there was insufficient evidence to show that reasonable grounds existed for the belief that plaintiff was disloyal to the United States, and reversed the decision of the Secretary of the Navy. The Secretary of the Navy was notified of this decision on May 3, 1949, and was requested to restore plaintiff to his former position. On May 31, 1949, the Commander of the New York Naval Shipyard notified plaintiff that he was entitled to restoration on June 1,1949.
Plaintiff made application for reinstatement on June 10, 1949, but was notified that the position he had held at the time of his suspension, to wit, “Electrician, Special Skill,” *235 had been abolished, and that the only comparable position open to him was “Electrician, Maximum.” This position paid 10 cents per hour less than the abolished position of “Electrician, Special Skill,” and plaintiff refused to accept it.
Plaintiff sues for his wages from the time of his suspension on December 12, 1947, to June 1, 1949, the date when the Navy Department was willing to restore him to duty, less the amount which he had earned in the interim in private employment. It is agreed that the amount plaintiff would have earned had he not been removed from his position with the Government is $5,033.44, and that he earned in private employment during the period of his suspension the sum of $1,904.73.
The Government also claims that there should also be deducted the amount of $180.00, which plaintiff received under the so-called “52-20 Club” provision of Public Law 346,78th Congress, (58 Stat. 284), and also the amount of $1,584.27, which plaintiff received as subsistence payments under the so-called “G. I. Bill of Bights,” Public Law 16,78th Congress, (57 Stat. 43).
Under our decisions in Lezin v. United States, 120 C. Cls. 724, 98 F. Supp. 574; Jackson v. United States, 121 C. Cls. 405; and Mendez v. United States, 119 C. Cls. 345, it is clear that plaintiff is entitled to recover. See also Frank H. Barnes, et al. v. United States, No. 70-52, decided December 2, 1952.
Defendant says in its brief that plaintiff is not entitled to recover, notwithstanding these decisions, because he refused reinstatement. This defense is without merit. Plaintiff is not suing for his salary after the time restoration was offered to him, but during the time he was unlawfully removed from his position and until the time the Government was willing to restore him thereto. Therefore, his refusal of reinstatement, coming after the period involved, is not relevant to the issues presented.
Defendant relies on cases holding that an employee must be ready, willing and able to perform the services for which he claims compensation. This is quite true, but it does not follow from plaintiff’s declination of the job offered him on or shortly after June 1, 1949, that plaintiff was not ready, *236 willing and able to perform the duties of the position of “Electrician, Special Skill” during the time this position was unlawfully withheld from him, especially in view of the fact that the job offered plaintiff was of a lower grade and paid a smaller compensation than the one he had held at the time of his removal. There is no showing that plaintiff would not have accepted the same position from which he had been removed. The presumption is to the contrary, because as soon as he got a favorable ruling from the Civil Service Commission and was notified he could be restored, he applied for his old position. Presumably he would not have applied for his old position if he had not been ready, willing and able to perform the duties of it.
Neither the case of Garcia v. United States, No. 50459, decided December 2, 1952, nor Wheeler v. United States, No. 74-52, decided December 2, 1952, involve the point discussed above.
The only new questions presented by this case are whether or not the amount of his compensation should be reduced by (1) the amount received by plaintiff under the “52-20 Club” provisions of Public Law 346, supra, and (2) the subsistence payments under the “G. I. Bill of Bights,” Public Law 16, supra.
First, as to the “52-20 Club” payments. The Act of June 10,1948, 62 Stat. 354 (5 TJ. S. C. sec. 652), under which plaintiff claims the right to recover, gives him the right to compensation for the period during which he was removed or suspended without warrant or justification, “less any amounts earned by him through other employment during such period,” and, it is recited, he “shall for all purposes except the accumulation of leave be deemed to have rendered service during such period.” The “52-20 Club” payments were made under the provisions of Public Law 346, supra, which in sections 700 (a) and 900 (a) provide for the payment of not more than $20.00 a week “for each week of unemployment, not to exceed a total of 52 weeks.” Plaintiff was paid $180.00 under this provision of the law because of his unemployment. His unemployment was brought about by the unwarranted action of the Navy Department, for which he seeks redress.
But the Act of June 10,1948, supra, says that plaintiff is *237 entitled to his pay during this time just as if he had rendered service during the time. It says that he “shall * * * be deemed to have rendered service during such period.” The result of this Act and our judgment giving him the amount of his pay during this period amounts to a determination that plaintiff was not unemployed during this period, but that he should be treated as having been employed and as having “rendered service” during this time. If he was not unemployed, and if we treat him as having rendered service during this period, then he was not entitled to benefits under the “52-20 Club” provision of Public Law 346.
The defendant, therefore, should have the right, and we think it does have the right, to offset against the amount of the judgment to be rendered in plaintiff’s favor the amount paid him because of the mistaken belief that he was unemployed.
Viewed in another light, we might well treat the payment to him of the $180.00 as a payment on account of the salary that we now find he was due to have received during the time for which the $180.00 unemployment compensation was paid.
At any rate, we are of the opinion that the defendant is entitled to deduct from the amount of compensation due plaintiff the amount of $180.00 paid him under Public Law 346, supra.
Second, as to the subsistance payments received by plaintiff pursuant to the “G. I. Bill of Bights” provision of Public Law 16, supra. On April 1, 1948, plaintiff enrolled in a course for camera repairs, and from this date through June 1, 1949, he received from the Veterans Administration a total of $1,584.27 as subsistence payments authorized by this law and the regulations of the Veterans Administration. The defendant claims the right to offset these payments against the amount of his compensation for the period he was unlawfully removed from his position. We are of the opinion the defendant is entitled to this offset.
The Begulations of the Veterans Administration, C. F. B. Title 38, sec. 21.105, provides that:
On or after April 1,1948, the rate of subsistence allowance plus compensation received for productive labor by a veteran pursuing a course under Part VIII shall not exceed $210.00 per month for a veteran without a *238 dependent, $270.00 per month for a veteran with a dependent, or $290.00 a month for a veteran with two or more dependents.
This means, of course, that if the compensation for productive labor of a veteran with no dependents is less than $210.00 per month, then his compensation shall be supplemented by a subsistence allowance sufficient to bring it up to this figure. The evidence does not show whether plaintiff had any dependents or, if so, how many. For the lack of this evidence, we shall assume that plaintiff had none. If he in fact had two or more, this may be made to appear on a motion for new trial.
Plaintiff’s compensation as an “Electrician, Special Skill” with the New York Naval Shipyard was approximately $280.00 per month. Had he been receiving this compensation for the period from April 1, 1948, through June 1, 1949, he would not have been entitled to any subsistence allowance under the provisions of the above quoted Veterans Administration regulation, if a veteran with not more than one dependent. We are now rendering a judgment for the amount of this compensation on the theory that he had “rendered service during such period.” Since he is entitled to compensation of more than $270.00 per month, during the period in question, he is not entitled to a subsistence allowance, unless he had more than one dependent.
This amount also may be said to have been paid him on account of the wages to which he was entitled during the time of his unlawful removal from his position. It would not have been paid him had he been receiving these wages.
It results that plaintiff is entitled to recover the sum of $5,033.44, less the following sums: (1) $1,904.73 received in private employment; (2) $180.00 received under the “52-20 Club” provision of Public Law 346; and (3) $1,584.27 received as subsistence payments under Public Law 16 and the applicable provisions of the Veterans Administration regulations.
It results that plaintiff is entitled to recover from the defendant the amount of $1,364.44.
Howell, Judge; Madden, Judge; Littleton, Judge; and Jones, Chief Judge, concur.
*239 FINDINGS OF FACT
The court makes findings of fact, based upon the stipulation of facts entered into between the parties, and the briefs and argument of counsel, as follows:
1. Plaintiff is a citizen of the United States and a resident of the State of New York.
2. Plaintiff served in the Army of the United States from April 29, 1941, to August 27, 1943, at which time he was given an honorable discharge on medical grounds.
3. On February 1, 1944, plaintiff was appointed to the position of Electrician, third class, at the New York Naval Shipyard under War Service Regulations. On January 28, 1946, plaintiff’s war service status was converted to competitive classified civil service status under authority of Executive Order 9644 of October 19,1945.
4. On December 8,1947, plaintiff was served with a letter of charges in which he was informed that it was proposed to remove him from his employment at the New York Naval Shipyard for his activities which indicated reasonable grounds for belief that he was disloyal to the Government of the United States. This action was taken in accordance with Executive Order 9835 of March 21, 1947, which established the procedures for the administration of an employee Loyalty Program for the Executive Branch of the Federal Government. The reasons for the proposed removal were stated as follows:
(a) In 1937 you registered as a Communist Party member in Westchester County, N. Y.
(b) It is reported that you are a radical Communist and have made statements indicating personal sympathy with Communist Party doctrines.
(c) You have associated with and have been subjected to close influence by persons who are known to be pro-Communist and have given repeated indication of your leanings toward Communist policies.
(d) Among your relatives are people who have expressed themselves as being pro-Communist and have indicated strong Communist beliefs.
Plaintiff was informed of his right to a hearing before the Shipyard Loyalty Hearing Board and also of his right to reply in writing.
*240 5. On December 12, 1947, plaintiff was suspended from his position and placed in a non-pay status.
6. On December 22, 1947, plaintiff replied in writing to the letter of charges. On the same day he was granted a hearing before the.Shipyard Loyalty Hearing Board and appeared in person.
7. On December 29, 1947, The Commander, New York Naval Shipyard transmitted to plaintiff the following communication :
NEW YORK SHIPYARD
29 DEC 1947
From: The Commander
To: Jack Getzoff, Electrician (Special Skill), Check
No. 51-9043
Sub]: Final decision and notification of removal based on reasonable grounds for the belief of disloyalty
Ref: (a) Cdr’s rest. Itr LA/Getzoff (150), dtd 8 Dec
1947
1. In reference (a) you were informed that it was proposed to separate you from the service of this activity at the close of business on 12 December 1947. However, at your request you were granted a hearing before the Loyalty Hearing Board on 22 Dec. 1947.
2. After a thorough review of all the evidence and testimony submitted at your hearing, it is considered that your removal from the service for the charges preferred against you is warranted.
3. You are informed of your right to appeal this decision to the Secretary of the Navy, via The Commander, within ten days from the date of this decision. Should you file an appeal from this decision within ten days from the date of this letter you will be carried in a suspended duty status, pending final action in your case. In the event you appeal to the Secretary of the Navy and subsequently receive an adverse decision, you are informed that you have a right to then appeal to the United States Civil Service Commission. Should you not file an appeal to the Secretary of the Navy within the ten days stipulated, you will be carried in a suspended duty status until 12 January 1948, at which time you will be removed from the service. However, in the event you fail to appeal to the Secretary of the Navy and are removed as previously stated, you have the right to appeal directly to the Civil Service Commission within thirty days from the effective date of your removal.
*241 4. You are hereby informed that it is mandatory for you to advise The Commander in writing as to which appeal channel you elect should you desire to appeal this decision.
/s/ F. E. Haeberle /t/ F. E. Haeberle Read Admiral, USN
8. On January 10, 1948, plaintiff informed The Commander of the New York Naval Shipyard that it was his intention to appeal the decision of The Commander to the United- States Civil Service Commission.
9. Effective January 12,1948, plaintiff was removed from his position pursuant to Executive Order 9835 and was informed as follows:
By letter dated 8 Dec. 1947 charges were preferred against you based upon reasonable grounds for belief of your disloyalty to the Government of the United States. You were granted a hearing before the Loyalty Hearing Board of this activity on 22 Dec. 1947. After careful consideration of all the evidence and testimony presented at your hearing, it is the Commander’s decision that your removal from the service is warranted. Accordingly, your removal will become effective on the date shown in Item 3 above.
Since you failed to appeal to the Secretary of the Navy within the time period stipulated in The Commander’s letter dated 29 Dec. 1947, you are hereby informed that should you desire to appeal this action, you may appeal only to the Regional Director of the U. S. Civil Service Commission, 641 Washington Street, New York, N. Y., provided you file such an appeal within thirty days from the date of this letter.
At the time of his removal plaintiff was rated as Electrician, Special Skill, earning a maximum wage rate of $13.04 per diem.
10. On March 16, 1948, plaintiff submitted an affidavit to the Regional Office of the Civil Service Commission in which he stated that he was not a Communist and not in sympathy with their ideas. He also stated that he wished to have a personal hearing before The Commission in respect to the charges made against him by the New York Naval Shipyard.
11. On March 30, 1948, the Regional Office of the Civil Service Commission in New York City decided that plain *242 tiff’s removal had been made in compliance with the statutory procedure required by Section 14 of the Veterans’ Preference Act of 1944; that its decision was in no way a decision on the merits of the case, and that accordingly the appeal would be forwarded to the Civil Service Commission’s Loyalty Review Board, Washington, D. C., so that a decision could be reached on the merits of the case.
12. On May 3,1948, a panel of the Loyalty Review Board considered the case. On May 5, 1948, the Board recommended to plaintiff that he take an appeal to the Secretary of the Navy, as authorized by Executive Order 9835. The Board stated that such an appeal would not prejudice plaintiff’s right to a further appeal to the Loyalty Review Board.
13. In pursuance of the recommendation of the Civil Service Commission’s Loyalty Review Board, plaintiff, on May 19, 1948, appealed the decision of The Commander of the New York Naval Shipyard to the Secretary of the Navy.
14. On July 26,1948, a hearing was held on plaintiff’s case in the Navy Department, Washington, D. C., by the Navy Department Loyalty Appeal Board at which time plaintiff appeared and testified.
15. On November 30, 1948, plaintiff was notified by the Acting Secretary of the Navy that the decision of The Commander, New York Naval Shipyard, to remove him from the service was approved.
16. On December 27, 1948, plaintiff appealed the decision of the Acting Secretary of the Navy to The Loyalty Review Board.
17. On March 2,1949, plaintiff appeared before a panel of The Loyalty Review Board in person and was accompanied by counsel.
18. On March 2, 1949, The Loyalty Review Board Panel, by a memo addressed to the Chairman of the Loyalty Review Board, concluded that there was insufficient evidence that reasonable grounds existed for the belief that plaintiff was disloyal to the United States and accordingly reversed the decision of the Navy Department’s Loyalty Appeal Board.
19. On May 3, 1949, the Chairman of the Loyalty Review Board advised the Navy Department of the action of the Panel and requested the Navy Department to restore plaintiff *243 to his former position in the New York Naval Shipyard at once.
20. On May 31, 1949, plaintiff was notified by The Commander, New York Naval Shipyard, that he was entitled to restoration on June 1, 1949, or as soon thereafter as convenient, but that if he did not resume his employment within ten days he would be carried in a leave-without-pay status.
21. Plaintiff reported for duty at the New York Naval Shipyard on or about June 19, 1949, and made application for reinstatement. The position “Electrician, Special Skill”, which plaintiff had held at the time of his removal on December 29,1947, had been abolished by Order of the Under Secretary of the Navy on November 10, 1947, although plaintiff was still so classified at the time of his dismissal. A copy of this Order was not received by the New York Naval Shipyard until December 19, 1947; and, on December 30, 1947, the Commander of the New York Naval Shipyard promulgated the said Order effective as of November 10, 1947. Accordingly, plaintiff was offered the position “Electrician, Maximum” which paid 10 cents per hour less than the abolished position “Electrician, Special Skill.” The offered position was the only position of like status then available at the New York Naval Shipyard. Plaintiff refused to accept the offered position of “Electrician, Maximum.” The Loyalty Review Board has approved the offered position as being in compliance with its order of restoration.
22. If plaintiff had remained in duty status from December 12, 1947, the date he was initially placed in a non-pay status, to June 1, 1949, he would have received the sum of $5,033.44.
23. Plaintiff earned the sum of $1,904.73 from private sources during the period December 12,1947, to June 1,1949, inclusive.
24. Beginning with the week ending January 4,1948, and extending through the week ending February 29,1948, plaintiff received $20.00 per week, or a total of $180.00, as Readjustment Allowance from the State of New York. These payments were made under the so-called “52-20 Club” provisions of Public Law 346, 78th Congress, and *244 were reimbursed to the State of New York by the Veterans Administration.
25. On April 1,1948, pursuant to the “G. I. Bill of Rights” provisions of Public Law 16,78th Congress, plaintiff enrolled in a course for camera repairs. During the period April 1, 1948, through June 1, 1949, he received the sum of $1,584.27 as subsistence payments from the Veterans Administration while he was enrolled in the said course.
26. On May 4, 1950, the plaintiff completed his training under the provisions of Public Law 16 and since that date he has had no further training.
CONCLUSION OE LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is entitled to recover, and it is therefore adjudged and ordered that he recover of and from the United States one thousand three hundred sixty-four dollars and forty-four cents ($1,364.44).