UNITED STATES of America, Appellee,

v.

Karl H. STELLO, Appellant.

No. 14119.

United States Court of Appeals Third Circuit.

Argued Feb. 21, 1963.

Decided March 11, 1963.

Rehearing Denied May 9, 1963.

Townes L. Dawson, Hyattsville, Md., for appellant.

J. Shane Creamer, Asst. U. S. Atty., Philadelphia, Pa. (Drew J. T. O'Keefe,

8. 197 F.2d 640 (C.A.2) 1952, cert. denied 345 U.S. 905, 73 S.Ct. 644, 97 L.Ed. 1342.

U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN and GANEY, Circuit Judges, and COHEN, District Judge.

PER CURIAM.

In 1958 appellant was a civilian employee of the United States Navy. On or about June 3, 1958 he was discharged from that employment. On July 13, 1959, he was ordered reinstated in his position by the Civil Service Commission. The latter directed that he be given retroactive back pay from the date of his discharge to the date of his reinstatement. The amount of that pay was to be in accordance with the governing statute, 5 U.S.C. § 652. He was entitled to recover compensation at the rate received by him on the date of his discharge for the period for which he received no compensation, less any amount he received from other employment during the time. Mendez v. United States, 96 F.Supp. 326, 119 Ct.Cl. 345 (Ct.Cl.1951); Green v. United States, 109 F.Supp. 720, 124 Ct.Cl. 186 (Ct.Cl.1953); Getzoff v. United States, 109 F.Supp. 712, 124 Ct.Cl. 232 (Ct.Cl.1953). In accordance with this, appellant was instructed in writing by the Navy to submit an affidavit "showing the amount gross-earned through this period, supported by any W–2 Forms received. In the event you received no earnings through wages, an affidavit to this effect is required."

After much backing and filling, in the course of which appellant forwarded the Navy two affidavits neither of which supplied the requested information, the Navy then wrote him asking that he furnish

"a. The gross amount of income earned through wages during the period 3 June 1958 to 13 July 1959 (copies of any W–2 Forms received for earnings for this period should also be submitted in support of the affidavit), or

"b. If you earned no money through wages during the period noted above, an affidavit so stating."

Appellant thereafter sent the Navy his affidavit, the first paragraph of which reads:

"WHEREAS, no net income was received by him during the period of 4 June 1958 to 13 July 1959, except $960.00 (Nine hundred and sixty dollars) received from unemployment compensation, since he was unable to obtain employment either in a government agency or private business, due to having been removed from his job for alleged cause and detrimental references given by Inspector of Naval Material supervisors, even though they had not worked with him enough to know him, and no security clearance."

It was proven at the trial that appellant worked for American Research and Manufacturing Corporation from May 16, 1958 to November 21, 1958 and that he actually received a little over $3,000 wages during that period. His gross wages amounted to $3,387.50. Appellant's counsel categorically agreed on the record that appellant did receive approximately $3,000 as above stated.

The indictment was for knowingly, wilfully and unlawfully making a false statement in violation of Title 18 U.S.C. § 1001. The case was tried to a jury. It resulted in a verdict of guilty. Appellant was sentenced to the custody of the Attorney General for six months. That sentence was suspended and appellant was placed on probation for three years.

This appeal has been thoroughly and tenaciously presented on behalf of appellant. Nine points are urged for reversal. All of these have been carefully examined by us. Eight of them are clearly without merit and need no discussion. The remaining contention is titled "The question is whether the Court erred in his comments on the case to the jury."

The court in that part of the charge against which complaint is now made emphasized that the crime charged was simple and direct—whether defendant made a false or fraudulent statement wilfully within the jurisdiction of a de-

partment of the United States. The court said, "Gobbledegook and double talk is no crime if you can get away with it." The court continued, "Did he make such a statement? He gets on the stand and says he is confused, didn't understand. Maybe he didn't know what 'wages' meant. Maybe he didn't read those letters. Maybe he didn't understand the letters. That is for you to determine." Then the court said: "But he admits that he made this statement that no net income was received by him during the period of 4 June 1958, to 13 July 1959, except $960 received from Unemployment Compensation, since he was unable to obtain employment either in a Government Agency or private business. He says to you that is literally true, that he is not guilty, because he had this employment before, and he wants to use the word 'obtain' in the sense of afterwards getting something. Is that what he meant, members of the jury?"

Complaint is also at this time directed at language of the court in connection with the instructions re intent. That section of the charge is set out at length in the footnote.[1] A single sentence is taken out of context—"But in whose favor was the confusion?" The jury was merely asked to consider the answer to that question in connection with all the other evidence respecting intent, as the court carefully stated, in order to determine the intent of the defendant. There was no objection to the sentence at the trial or to any other part of the charge. Regarding the "gobbledegook and double talk" sentence, that was specifically stressed by appellant as favorable to him in his petition for a new trial where he stated:

"FURTHER, Defendant contends that none of the statements submitted by him were actually false or fraudulent or made with the intention of obtaining anything but the back pay due him by decision of the Civil Service Commission. The Trial Judge himself termed the statements 'Double-Talk' and said that

[1]. "We come now to the question of intent. If admittedly he earned $3137, that claim in law had to be reduced from 70-some hundred dollars to be properly payable to him, to be owed to him by the Government, but you have to determine intent and what he meant by that. Was that statement false or fraudulent and wilfully made with intent that the Government would so accept it and perhaps enhance his return?

"He says, 'No. There was no intent on my part to defraud the United States. Far from it. I just was confused.' But in whose favor was the confusion? The question of intent is a matter for you as jurors to determine, and as intent is a state of mind, and it is not possible to look into a man's mind to see what went on, the only way you have of arriving at the intent of the defendant in this case is for you to take into consideration all of the facts and circumstances shown by the evidence, including the exhibits, and determine, from all such facts and circumstances, what the intent of the defendant was at the time in question. You must make that determination, and you must also bear in mind on that point that the law presumes that a man intends the natural and probable consequences of his acts.

"Members of the jury, there is a small compass here. The question of money, the amount from the United States, is not involved in this case. Your consideration is limited to whether, in what I have read, he made a false, fraudulent, or fictitious statement wilfully. Read that carefully as you go out. If you are convinced beyond a reasonable doubt, under the definition I gave you, that he did, he should be found guilty. If you believe him and believe that he at any time told the Navy Department during the month of August about this, which he said he thinks he did, he wasn't sure, he ought to be acquitted. If the Government has failed to establish its case beyond a reasonable doubt, he ought to be acquitted.

\* \* \* \* \*

"Again I say that the charge is limited to your finding that that statement which you see there contains a false or fraudulent statement or statements. If you find it does, that it was wilfully done, with intent on the part of this defendant, he should be convicted, he should be found guilty on the count. If you find that he didn't make any such statement or that the Government has failed to prove its case beyond a reasonable doubt, he should be acquitted."

a person cannot be convicted for such 'Double-Talk', \* \* \*"

Appellant had been a teacher and holds a degree in law but had "never practiced". His defense regarding the wages he had admittedly received was an attempted fine drawn distinction between gross and net income. He recognized and accepted the court's use of the word "double talk" as applicable to his statements and concluded that therefore they did not constitute a crime. "Gobbledegook" carries no more sinister implication than "double talk." It is defined in The American College Dictionary as "language characterized by circumlocution and jargon; \* \* \*"

We have grave doubts that the trial judge erred in either of the above instances. However, if any error was there involved we are satisfied that we cannot fairly hold it to have been of the substantial sort which would call for a reversal of the judgment. On the whole record the jury verdict was fully justified. The judgment of the district court will be affirmed.