Joe B. EVERETT

v.

The UNITED STATES.

No. 270-57.

United States Court of Claims.
Jan. 22, 1965.

Bruce G. Sundlun, Washington, D. C., for plaintiff. Gilbert Hahn, Jr., Dennis J. Tuchler, and Amram, Hahn & Sundlun, Washington, D. C., of counsel.

Alfred H. O. Boudreau, Jr., Washington, D. C., with whom was John W. Douglas, Asst. Atty. Gen., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

DAVIS, Judge.

Plaintiff, a non-veteran, was an employee of the Federal Government from 1939 until August 1954. In December 1953 he was injured in an automobile accident while performing official duties. After hospitalization and treatment, plaintiff returned to work in early 1954 and continued in his position as a deputy tax collector of the Jackson, Mississippi, Field Division of the Internal Revenue Service. Effective August 26, 1954, plaintiff was removed for cause. On appeal, the Commissioner of Internal Revenue affirmed the dismissal on the grounds that plaintiff had engaged in outside employment without written permission, performed his duties unsatisfactorily, and failed to cooperate with fellow employees; the Treasury Department denied a further appeal.

At the time of his dismissal, plaintiff had accumulated approximately six hundred hours of sick leave. Because of back injuries incurred in the automobile accident some eight months before, plaintiff applied for and received total disability compensation under the provisions of the Federal Employees' Compensation Act from the date of his removal until May 18, 1964; these payments amounted to approximately 75 percent of his salary rate. Since May 1964, plaintiff has received partial disability compensation.

Alleging that his removal was arbitrary and capricious, plaintiff seeks to recover salary compensation under the Lloyd-LaFollette Act, 62 Stat. 354, 355, 5 U.S.C. § 652(b) (1),[1] less the amount

---

1. The Lloyd-LaFollette Act, 37 Stat. 555, 5 U.S.C. § 652(a), originally enacted in 1912, provides: "No person in the classified civil service of the United States shall be removed or suspended without pay therefrom except for such cause as will promote the efficiency of such service * * *." This section prohibits removal from office on illegal, arbitrary, or capricious grounds. E. g., Gadsden v. United States, 78 F.Supp. 126, 111 Ct.Cl. 487 (1948). An employee found to have been improperly discharged is entitled to "compensation at the rate received on the date of such removal or suspension, for the period for which he received no compensation with respect to the position from which he was removed or suspended, less any amounts earned by him through other employment during such period * * *." 62 Stat. 354, 355, 5 U.S.C. § 652(b) (1).

of federal employees' disability compensation payments he has received. The Trial Commissioner has concluded, after a trial, that plaintiff's dismissal by the Internal Revenue Service was arbitrary and capricious. Finding 54. He has found that, even if plaintiff did engage in outside employment, his failure to obtain written permission was based on the good-faith belief of plaintiff and his superiors that he was not required to do so; and that removal of the plaintiff was a much too severe sanction according to the Internal Revenue Service's own rules. Finding 53(1). The Commissioner has further determined that neither the charge of unsatisfactory performance of duties nor that of lack of cooperation with fellow employees was supported by substantial evidence. Finding 53(a)(2), (4). The defendant has elected not to challenge these findings (Defendant's Exceptions and Brief, pp. 1, 9), and the court accepts them as correct. Accordingly, we hold that plaintiff was improperly removed in 1954. The defendant contends, however, that, since plaintiff has been either totally or partially disabled from the date of his separation, he is not entitled to recover anything on account of this wrongful dismissal.

■ This affirmative defense asserted by the Government is two-pronged. The first points to Section 7 of the Federal Employees' Compensation Act, 39 Stat. 742, 743, 5 U.S.C. § 757(a), which declares that recipients of disability payments under the Act "shall not receive from the United States any salary, pay, or remuneration whatsoever [for the same period] except in return for services actually performed, and except pensions for service in the Army or Navy of the United States." The defendant urges that this statute automatically precludes an employee who has received disability benefits from recovering back pay (for a wrongful discharge) for the same period—whether or not the

award of those benefits was erroneous or improper. Although the provision may seem on the surface to cover our facts, we hold it inapplicable, by itself, to bar recovery in this suit. The clause was originally enacted as Section 7 of the Employees' Compensation Act of 1916, 39 Stat. 742, 743, the aim of which was to place federal employees under a form of workmen's compensation. See Dahn v. Davis, 258 U.S. 421, 431, 42 S.Ct. 320, 66 L.Ed. 696 (1922). Section 7 appears to have been intended, primarily, to preclude personal injury actions against the United States (e. g., for negligence under statutes permitting suit against the Federal Government) once the employee elected to recover under the Compensation Act. See Dahn v. Davis, supra, 258 U.S. at 428–429, 42 S.Ct. 320.[2] It is the type of provision often included in workmen's compensation legislation to prevent double recovery from the employer for the same injury. The plaintiff, however, is seeking recovery for a wholly different wrong, that of improper discharge, and not for personal injury. Indeed, his theory is that, if he had not been removed, he would have been paid (and presumably would have performed services for the United States). His claim is therefore far outside the main purpose of Section 7, but within the spirit of the exception Congress made for services rendered. The section, in addition, has never been construed as controlling the relief provided by the Lloyd-LaFollette Act. We conclude that, in and of itself, it does not decisively close the gate on plaintiff's claim.

■ For the premise of the second facet of its argument that the plaintiff's incapacity bars recovery, the Government relies on a line of this court's cases declaring that back pay for improper dismissal should be denied where the employee was not ready, willing, and able to resume his position during the period for which relief was sought. Corrigan

2. Section 7 has since been amended to provide that the statutory remedy conferred by the Employees' Compensation Act is exclusive. 63 Stat. 861–62, 5 U.S.C. § 757(b). See Weyerhaeuser Steamship Co. v. United States, 372 U.S. 597, 601, 83 S.Ct. 926, 10 L.Ed.2d 1 (1963).

v. United States, 153 Ct.Cl. 392, 398 (1961); Armand v. United States, 136 Ct.Cl. 339, 342–44 (1956); Getzoff v. United States, 109 F.Supp. 712, 713, 124 Ct.Cl. 232, 235–36 (1953); Simon v. United States, 113 Ct.Cl. 182, 199 (1949); Nicholas v. United States, 53 Ct.Cl. 463, 466 (1918). The purpose of that prerequisite, first enunciated in United States v. Wickersham, 201 U.S. 390, 399–400, 26 S.Ct. 469, 50 L.Ed. 798 (1906), is to insure that federal employees who are improperly dismissed will recover no more than the amount actually lost as a result of the separation. Thus, an employee removed arbitrarily or capriciously "is entitled to recover whatever loss he may have suffered thereby." Gadsden v. United States, 78 F.Supp. 126, 127, 111 Ct.Cl. 487, 489 (1948). "[5 U.S.C. § 652, the statute providing relief for wrongful dismissal,] was designed to compensate employees for pay which they would have earned but for the wrongful separation. If the employee was incapable of performing the work for which the pay was to be received, it follows that he has lost nothing which he would have earned but for the wrongful separation." Armand v. United States, supra, 136 Ct.Cl. at 343.[3]

Plaintiff's demand is for the difference between (1) the amount he would have received had he been paid during the entire period at his salary rate at the time of discharge and (2) the amount he actually received under the Employees' Compensation Act. He insists this measures his pecuniary loss. But in attempting to place him as nearly as possible in the monetary position he would have

been but for his wrongful discharge, we are required, by the rule that the employee must be "ready, willing, and able," to evaluate his receipt of compensation payments for total or partial disability ever since the date of removal. At this stage of the proceedings, both plaintiff and defendant are unhappily confronted by the stumbling block that, in the past, they or their representatives have taken positions contrary to those they assert before this court. Although the plaintiff now contends that he is "quite ready to return to work, and has been so ready for a substantial period of time" (Plaintiff's Reply Brief, p. 5, filed Feb. 10, 1964), as late as May 4, 1964, he certified to the Bureau of Employees' Compensation that he was still totally disabled for his usual work. Finding 50(c). On the other hand, the defendant now urges that, because of total or partial disability, "plaintiff has never been able to perform the duties of his former position" (Defendant's Supplemental Brief, p. 6, filed Oct. 23, 1964); but, as early as 1961, the Bureau of Employees' Compensation tentatively set plaintiff's disability as only 10 percent (finding 42), and in November 1962 the Bureau wrote plaintiff that he was no longer deemed to be disabled (finding 50(a)).

To us, however, the decisive fact is that, regardless of the parties' fluctuating interim positions, for the whole period from the date of his removal in August 1954 until May 1964, plaintiff has applied for—and defendant has in the end granted—total disability compensation. Finding 50(d), (e).[4] Such grants are premised on the absolute inability of the employee to resume his normal

---

3. Relief under 5 U.S.C. § 652(b) (1) (see note 1 supra) may not give the aggrieved party the exact amount he would have earned had he not been wrongfully discharged, since it provides for compensation at the rate received on the date of discharge and has been held not to permit recovery for salary increases or for the value of annual leave during the period of removal. Schaffer v. United States, 311 F.2d 796, 160 Ct.Cl. 174 (1963).

4. Up to May 1964, the Bureau always receded, finally, from its tentative suggestions that plaintiff was no longer totally disabled or not disabled at all. Conversely, plaintiff always succeeded, up to May 1964, in ultimately convincing the Bureau that he was totally disabled and therefore in ultimately receiving total disability compensation for the entire period from 1954 to May 1964.

work.[5] Since the competent agency (the Bureau of Employees' Compensation) has officially determined that plaintiff was 100 percent disabled for this whole time and has taken final action on that basis, we accept its conclusion of total incapacity. Although we cannot review that finding in order to decide that an employee should or should not have been granted disability compensation (see 5 U.S.C. § 793; Nolen v. United States, 109 F.Supp. 391, 124 Ct.Cl. 230 (1953); Soderman v. United States Civil Serv. Comm'n, 313 F.2d 694 (C.A. 9, 1962), cert. denied, 372 U.S. 968, 83 S.Ct. 1089, 10 L.Ed.2d 131 (1963)), we are not necessarily precluded, in a suit for back pay under the Lloyd-LaFollette Act, from deciding in a proper instance that the agency's finding of disability was plainly wrong and should not be followed. But here neither party has undertaken to demonstrate that the Bureau was wrong, let alone clearly wrong, and we have no reason to disagree with its conclusions or to reject plaintiff's repeated certifications that he was wholly disabled.

■ It follows that plaintiff's receipt of total disability compensation from his removal in August 1954 until May 1964 precludes a finding that he would have been able to resume work during any part of that time.[6] As to that period, we must deny plaintiff's claim for the difference between the amount he would have received had he been paid at his old salary rate and the sum he obtained as compensation for total disability.

■■ Since May 1964, plaintiff has received compensation for partial disability. Though his present incapacity would apparently prevent him from resuming work as a deputy tax collector, he has been found to be physically able and otherwise qualified to perform the sedentary tasks of an accounting clerk; the pay rate for the latter position is approximately 37 percent less than that of a deputy tax collector, and plaintiff's compensation is therefore based on a 37 percent loss of wage-earning capacity. Finding 50(b), (d). Does this decrease make a difference in his right to recover in this action? Again we look to the purpose of the back pay provisions of 5 U.S.C. § 652, i. e. to place wrongfully discharged government employees in roughly the same monetary position as they would otherwise have been. In that light the issue becomes whether there would have been any duty or established practice on the part of the Government to reassign plaintiff, an injured employee, to a less exacting position which he was physically capable of performing. No statute or regulation imposes such a duty, and it does not appear to be the practice of the Bureau of Employees' Compensation to obtain less demanding government work for partially disabled employees or former employees. It goes almost without saying that this court cannot impose such a requirement; the amount and kinds of relief available to disabled federal employees are exclusively the province of Congress and the Bureau (free of judicial review). See, e. g., Soderman v. United States Civil Serv. Comm'n, supra. That being so, we cannot say that, if plaintiff had remained in his job but had suffered the same total disability which later improved, he would then have been assigned to a less exacting position giving him a salary great-

---

5. Applications to the Bureau of Employees' Compensation ⸗ for disability payments must include the certification of the employee's physician that he is in fact disabled. Question 5 of the physician's form of certification asks: "Is disability total for usual work?" Question 10 is: "Is claimant, in your opinion, able to perform other work?" In plaintiff's May 4, 1964, application for total disability, his physician answered question 5 affirmatively and question 10 in the negative.

6. In Armand v. United States, supra, 136 Ct.Cl. at 343, plaintiff received a pension from the Veterans Administration based on a disability rating of 100 percent during the period for which he requested relief for improper dismissal. Because "the only evidence in support of plaintiff's ability to perform [was] his own testimony to that effect, together with the fact that during the period he periodically requested the Navy to reinstate him," the court denied recovery.

er than the sum he is now getting as partial disability benefits.[7] He would, rather, have been left, so far as the Federal Government was concerned, with his lessened disability compensation. For that reason, we hold that for the period since May 1964, too, plaintiff is not entitled to relief based on the difference between the amount of his potential salary compensation and his disability payments.

 This application of the established rule that the discharged employee must be able to perform in his old job, plaintiff argues, is tantamount to permitting the Government to discharge its injured or incapacitated workers with impunity. Even if declaratory and injunctive remedies are put aside, this would only be the result where the employee suffers no pecuniary loss. In that case it is hard to see why the employee should recover compensation, although he may have a right to some non-monetary form of relief.[8] Plaintiff, for instance, is in the same monetary position he would have held if he had *not* been dismissed arbitrarily, and the defendant has secured no monetary advantage by its action. Remedial compensation of the type awarded by this court is not an appropriate sanction.[9]

 As an independent ground for recovery, plaintiff also asserts that the defendant committed a procedural error in failing to apprise him of his disability retirement rights prior to his discharge. That requirement is stated in Memorandum No. 10 of the Jackson, Mississippi, Director of Internal Revenue. Even if such a local directive were to be given the effect of a departmental regulation granting individual rights, we cannot see how this plaintiff was so injured by noncompliance as to give him a monetary claim. The retirement benefits which he could have received at the time of his discharge were far below the amount he obtained as compensation for total disability (finding 22(b) ), and the two methods are mutually exclusive. 41 Stat. 614, 617, 5 U.S.C. § 2257(f). It was apparently for this reason that plaintiff changed his initial application for disability retirement to one for employee's compensation payments. Finding 22(a). Although we can assume, without deciding, that some procedural error was committed, there was no harm to the plaintiff.

 One narrow avenue of pecuniary relief is open. Because of his wrongful discharge, plaintiff was unable to use about 600 hours of accumulated sick leave. Had he not been arbitrarily dismissed, he probably would have chosen to go on sick leave, for some 75 working days after August 26, 1954, at full pay rather than to receive total disability benefits which were approximately 75 percent of that amount. See 65 Stat. 679, 681, 5 U.S.C. § 2063(a), and 39 Stat. 742, 743, 5 U.S.C. § 758. The defendant asserts that plaintiff in fact elected disability compensation instead of sick leave pay. But a discharged employee is not entitled to a lump sum payment based on his accrued sick leave. Martilla v. United States, 118 Ct.Cl. 177, 182 (1950). Plaintiff applied for dis-

---

7. Plaintiff asserts that the Civil Service Commission has a program through which it attempts to place partially disabled government employees in less exacting positions. But such individuals are not necessarily given priority over other job applicants by employing agencies within the Government, and, if reemployed, they lose their rights to disability retirement pay. In these circumstances, plaintiff has not shown that he suffered financial injury by his inability to use what amounts to one free employment agency operated by the Federal Government.

8. We are, of course, not authorized to inflict a monetary penalty on the Government in such circumstances.

9. Plaintiff also implies that our prior denial of the defendant's motion for summary judgment, based on the disability defense, resolved that issue in plaintiff's favor. The denial was of both plaintiff's and defendant's motions for summary judgment, and it was made by order without opinion. It was by no means a determination on the merits, but was intended to allow the facts to be developed by a trial before the merits were decided.

ability compensation instead of sick leave pay because he had no option. He was forced, wrongfully as we now know, to discard his right to the latter. He can therefore recover the additional amount he would have been paid had he been able to take advantage of his accumulated sick leave.

Plaintiff is entitled to recover on account of his lost sick leave, in accordance with this opinion, and judgment is entered to that effect. The amount of recovery will be determined under Rule 47(c). Otherwise the petition is dismissed.