Pee CtjRiam:
This case was referred pursuant to Buie 57(a) to Chief Trial Commissioner Marion T. Bennett, with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on October 25, 1965. On November 12,1965, the defendant filed a notice of acceptance of the commissioner’s report consenting to the entry of judgment pursuant- to the recommendation therein and in the amount to be determined under Buie 47 (c). The court agrees with the commissioner’s findings, his opinion and his recommended conclusion of law, as hereinafter set forth, and hereby adopts the same as the basis for its judgment in this case. Plaintiff is, therefore, entitled to recover back pay from January 4, 1963, the date of her unlawful discharge, to April 23, 1964, when she was restored to duty, and judgment is entered to that effect with the amount of recovery to be determined pursuant to Buie 47(c).
In accordance with the opinion of the court and a memorandum report of the commissioner as to the amount due thereunder, it was ordered on May 2,1966, that judgment for the plaintiff be entered for $6,435.52 with $41.25 to be credited as premiums on plaintiff’s Federal Employees’ Group Life Insurance, $418.44 to plaintiff’s Civil Service Betirement Fund, $106.08 to plaintiff’s Federal Employees’ Health Benefits, and the balance of $5,869.75 to be paid to plaintiff.
OPINION OF COMMISSIONER
Bennett, Chief Commissioner:
The sole issue presented for consideration in this claim for back pay is whether in the interim, between plaintiff’s unlawful dismissal from her civilian position with the Navy and her subsequent reinstatement, she was ready, willing and able to discharge her duties. The defendant asserts as an affirmative defense that she was not.
On January 4, 1963, plaintiff, a career civil service employee, was discharged from her position as a military pay clerk, GS-4, with the Navy Finance Office, New York City, *287 on the ground of insubordination. Specifically, it was alleged that on two occasions plaintiff refused to perform her assignment because of difficulty with her vision which was caused by eye-drop medication she was taking on advice of a physician to relieve a supposed condition of glaucoma.
Plaintiff appealed the dismissal to the New York Regional Office of the Civil Service Commission. The appeals examiner found use of the medication to have been reasonable and that the charge of insubordination had not been sustained. He recommended that plaintiff be reinstated and the separation be canceled.
Upon appeal by the Navy Finance Office, the Civil Service Commission’s Board of Appeals and Review thereafter rescinded the decision of the regional office and remanded the case back to it “for additional investigation and adjudication.”
The New York Regional Office then reversed its earlier decision and decided that the charge of insubordination had been sustained. It found that a review of plaintiff’s medical history did not yield sufficient evidence that plaintiff was suffering from glaucoma at the time she declined to work in November 1962, or for 5 months prior to that time, and consequently, the use of pilocarpin eye drops was unwarranted.
On April 10, 1964, the Board of Appeals and Review sustained plaintiff’s appeal and reversed the last decision of the New York Regional Office. Plaintiff was examined by Navy physicians, pronounced fit, and on April 23, 1964, she was restored to her former position.
Under the Lloyd-LaFollette Act, 37 Stat. 555, as amended, 62 Stat. 354, 355, 5 U.S.C. § 652(b) (1), an employee found to have been improperly discharged and who is reinstated, is entitled to “compensation at the rate received on the date of such removal or suspension, for the period for which he received no compensation with respect to the position from which he was removed or suspended, less any amounts earned by him through other employment during such period, * *
The Court of Claims has applied this statute in several cases. The recent opinion in Everett v. United States, 169 Ct. Cl. 11, 340 F. 2d 352 (1965), collects these cases. As stated on page 16 of the opinion, the rationale for *288 this statutory requirement is that the Lloyd-LaFollette Act, supra, “* * * was designed to compensate employees for pay which they would have earned but for the wrongful separation. If the employee was incapable of performing the work for which the pay was to be received, it follows that he has lost nothing which he would have earned but for the wrongful separation. Armand v. United States, supra, 136 Ct. Cl. at 343.”
Where, as in Everett and Armand, the dismissed employee was physically incapable of performing his job and thus not entitled to recover, the court laid prime emphasis on the fact that he had received a disability rating of 100 percent from agencies of the Government. Presumably the court would have accepted other competent evidence of total disability. In the instant case, the court has been offered only the most indirect and inconclusive evidence to support the affirmative defense that plaintiff was disabled or otherwise unable or unwilling to work during the period of her separation. Plaintiff’s testimony that she was ready, willing and able to work while wrongfully separated is corroborated by the weight of other evidence.
On November 7,1961, over a year before plaintiff was discharged by defendant, she had the misfortune of being injured while a passenger in a taxicab which was involved in an accident. She was hospitalized for 5 weeks. She suffered a brain concussion and contusions, apparently giving rise to some other disorders, for which she is still undergoing treatment. However, serious as her in juries were, she was only off the job temporarily. Within 3 weeks after she was released from the hospital, she was back at her post where she worked for 10 months until the first incident which gave rise to charges leading to her discharge.
In 1962, while plaintiff was still working for defendant before her discharge in January 1963, she brought a suit against the cab company and in November 1963 the case was settled for a substantial sum. The doctor who had been treating her gave an affidavit in that case in June 1963 wherein he expressed the opinion that, as a result of the accident, plaintiff was suffering from a post-traumatic personality disturbance and would be incapable of performing her job *289 for a long time. Defendant relies upon this statement to contend that plaintiff was not mentally capable of performing the duties of her position for a good part of the time she was separated from the defendant’s payroll. No medical testimony was offered by either side at the trial of the instant case.
Plaintiff does not consider the affidavit as competent evidence and, in fact, it was hot received for the truth of its contents but because the commissioner considered that it was relevant and competent as its publication amounted to a waiver. Defendant says that plaintiff seeks to use her accident as both a sword and shield. She would claim disability for purposes of recovery in the taxicab incident and deny it for purposes of the instant suit. In resolving that matter, the dates and the weight of other evidence in the case are important.
Plaintiff was back at work after her accident long before she was discharged by defendant. It can safely be concluded that defendant would not have taken her back had she been unable to work. During the period of her unlawful separation, she made attempts to get work and even to draw unemployment compensation. The cloud of her discharge, however, thwarted her at every turn. After the Commission ruled in her favor, she was examined by defendant’s doctors, pronounced fit, and restored to duty. Her doctor was and is entitled to his opinion about whether she can or should work in view of her disabilities. The fact is that she has shown that those disabilities, such as they are, do not prevent her working. She continues to hold her position to this day and is strongly motivated to do so, since she is the sole support of her mother, daughter and herself. It may be added that those disabilities were not properly in issue when she was discharged. The issue then was insubordination. The Civil Service Commission properly resolved that fact after the ball had bounced back and forth several times until it was decided that the severe penalty of discharge did not fit the alleged offense. She had taken medicine on her doctor’s instructions, fearing the consequences of blindness if she did not. This blurred her vision temporarily. She declined assigned tasks until her vision cleared, as it soon did. There is nothing to *290 suggest that defendant regarded her as mentally incompetent to hold her job then or later. True, she was not up to par physically. Thus, perhaps she was not the most efficient worker in the office. She was encouraged to seek disability retirement, but nothing came of this.
Plaintiff has met her burden of proof and has shown that she was ready, willing and able to work during the period of her involuntary separation but could not get work due to no fault of her own. There was no medical testimony that she was not physically or mentally able to work. There was, on the other hand, reliable evidence of her search for employment; of the examinations by defendant’s physicians declaring her fit before she was restored to duty; of her record of steady employment before and after her involuntary separation ; and of her strong motivation to work. This is good enough to rebut any possible inference that she was disabled while separated and could not have won her other lawsuit had the doctor who made the affidavit therein been wrong in his prognosis. If there is to be speculation about that, perhaps it is proper to observe that a passenger in a taxicab who is injured due to no fault of her own, spending 5 weeks in the hospital, has an attractive tort claim aside from any such affidavit. Plaintiff is entitled to recover.
FINDINGS or Fact
1. On January 4, 1963, plaintiff, Miss Thelma Keith, a resident of Long Island City, New York, and a career employee in the competitive civil service, was discharged from her position as a military pay clerk, GS-4 ($4950), with the Navy Finance Office, New York City, on the ground of insubordination. Specifically, it was alleged that on November 13 and 16, 1962, plaintiff declined to perform her work assignments because eye drops she had been using on advice of her doctor, to relieve a glaucoma condition from which it was thought she was suffering, caused her vision to be blurred.
2. On February 19,1963, plaintiff’s appeal of her dismissal was heard by the New York Eegional Office of the Civil Service Commission. On March 19, 1963, this office found that the charge of insubordination had not been sustained, *291 since the use of the medication was reasonable under the circumstances. Since the discharge could not be sustained to promote the efficiency of the service, it was recommended that plaintiff be reinstated and that the separation be canceled. It was further found that the agency had complied with all procedural requirements of the law and regulations.
3. Upon appeal by the Navy Finance Office, the Civil Service Commission’s Board of Appeals and Beview, on October 11, 1963, rescinded the'decision of the regional office and remanded the case back to it for additional investigation and adjudication.
4. On January 31, 1964, the New York Begional Office reversed its earlier decision and decided that the charge of insubordination had been sustained. It found that a review of plaintiff’s medical history did not yield sufficient evidence that plaintiff was suffering from glaucoma at the time she declined work in November 1962 or for 5 months prior to that time, and consequently, her use of pilocarpin drops was unwarranted.
5. On April 10,1964, the Civil Service Commission’s Board of Appeals and Beview sustained plaintiff’s further appeal on the basis that the removal was too drastic and the ground therefor was not sustained, and reversed the January 31 decision of the New York Begional Office. It further recommended that plaintiff be restored to her former position retroactive to January 4, 1963.
6. After plaintiff was examined by Navy physicians and found to be in satisfactory condition, she was restored to her position as military pay clerk, effective April 23,1964. Since being reinstated, plaintiff has been working continuously at her former position. She has been self-supporting since 1941 and supports her daughter and mother.
■7. On November 7,1961, plaintiff was injured while a passenger in a taxi. She was confined to Beth-Israel Hospital in New York for a period of 5 weeks, being released on December 21,1961. On January 15,1962, plaintiff returned to her job. There is no evidence that her work was anything but satisfactory until the first incident in November 1962, described in the charges.
8. On October 13,1962, plaintiff wrote a letter to her super *292 visor, at bis suggestion, requesting disability retirement because of the condition of her eyes. However, aside from this preliminary letter, plaintiff did not formally file an application for retirement and none was processed.
9. In connection with the accident described above, sometime in late 1962, plaintiff filed a suit against the Calif on Taxi Corporation and Douglas Weill. Subsequently, in November 1963, plaintiff received a settlement of $15,000. In connection with this case, plaintiff filed with the New York court an affidavit, dated June 17, 1963, by Dr. Lawrence Kaplan who had treated her, beginning in February 1963. Dr. Kap-lan was of the opinion that, as a consequence of the brain concussion and contusions plaintiff sustained in the accident, she was suffering from a post-traumatic personality disturbance and that she would be incapable of performing the duties of her vocation for a long time. She is still being treated by Dr. Kaplan.
10. In the 16-month period between her discharge and reinstatement, plaintiff was unemployed and was not offered employment. However, she took a number of positive steps to obtain employment which were thwarted in part by the adverse action that had been taken against her by defendant.
(a) Sometime in January 1963, plaintiff took a typing test with the New York State Unemployment Service. Plaintiff passed the test and was referred to the New York State Employment Office. She did not receive any position from this office, since she explained to them that her discharge from the Navy was on account of trouble she had been having with her eyes and that it was caused by the accident in which she had been involved or perhaps by glaucoma. In addition, she was told by the employing authority that she would not be considered for a position since her appeal in the dismissal action was still pending.
(b) Approximately 1 month later, in February 1963, plaintiff returned to the New York State Employment Office, and was referred to the Internal Revenue Service. After the interviewer at the Revenue Service phoned the State Employment Office, plaintiff was told she could not be hired.
(c) Subsequently, the State Employment Office referred plaintiff to a movie theater for employment. At the inter *293 view for this position, plaintiff did not inform the interviewer that she had trouble with her eyes. The interviewer was to have contacted plaintiff, within a few days, but failed to do so.
(d) Plaintiff continued to report to the employment office every 10 days. These visits were subsequently rescheduled by the office to once a month and finally to once every 3 months.
(e) On her own, plaintiff, attempted to seek employment with a real estate broker for whom she had previously done some part-time typing. Plaintiff did not receive any response from the broker,, after he had contacted plaintiff’s supervisor at the Navy Department..
(f) In addition, to pass the time during her separation, plaintiff helped a friend with volunteer church work.
(g) Plaintiff was unable to obtain unemployment compensation only because her discharge by defendant was interpreted as arising from her wrongful act.
11. At the trial'of the case, no medical testimony was offered by either side as to plaintiff’s physical condition during the period of her separation.
12. On April 24, 1964, and July 14, 1964, plaintiff made unsuccessful written demands upon the employing agency for back pay from J anuary 4,1963, to April 24,1964.
13. On July 14,1964, in response to a request by the Navy Eegional Finance Center, New York, to the General Accounting Office for a ruling as to possible exclusion of back pay claimed by plaintiff, the exclusion to be based on her alleged physical inability to work during the period of her wrongful separation, the latter did not render any decision but referred the matter back to the Navy Eegional Finance Center. Plaintiff has not received any back pay for the period of her separation. At the time of her separation, plaintiff had a credit of 9 hours of annual leave and a debit of 31 hours of sick 1 eave. Defendant has been recompensed for the difference. Plaintiff does not assert as part of her claim any entitlement to leave or grade increases.
Ultimate FINDING
14. In the interim between her unlawful dismissal, effective January 4, 1963, and subsequent reinstatement on April 23, *294 1964, plaintiff was ready, willing and able to discharge her duties but was not permitted to do so and received no salary from defendant during this period, nor any other salary, unemployment compensation or disability compensation from public authorities.
CONCLUSION op Law
Upon the foregoing findings of fact and opinion of the commissioner, adopted by the court and made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover back pay from January 4,1963, the date of her unlawful discharge, to April 23,1964, when she was restored to duty, and judgment is entered to that effect. The exact amount of recovery will be determined pursuant to Buie 47(c).