**Albert PICCONE**

v.

**The UNITED STATES.**

No. 352-62.

United States Court of Claims.

Feb. 14, 1969.

Peter A. Galante, Philadelphia, Pa., attorney of record, for plaintiff.

Lawrence S. Smith, Washington, D. C., with whom was Asst. Atty. Gen. Edwin L. Weisl, Jr., for defendant, Alfred H. O. Boudreau, Jr., Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

OPINION

DAVIS, Judge.*

Plaintiff, a non-veteran, sues to recover back pay from the date he was separated from his civilian position with the Navy at the Philadelphia Naval Shipyard; his removal was on the ground that he was physically unable to perform the duties of his rating and that his separation would therefore promote the efficiency of the service. He presents several grounds for recovery; we find that an important procedural requirement of the Navy's own regulations was violated in his separation, and do not reach his other contentions.

Piccone had permanent status in the career civil service and held the rating of "Joiner". The typical duties of a joiner at this shipyard were performed on and

* We are indebted to Trial Commissioner Franklin M. Stone for his opinion and findings of fact. We incorporate the gist of his factual findings, insofar as pertinent to our decision, and reach the same ultimate conclusion (though on somewhat different grounds). The facts necessary to the determination of the issues at this stage of the litigation are contained in our opinion.

off ship (with a major part on the ship), consisted of most of the woodwork aboard ship, and required climbing scaffolds, doing overhead work, stooping, bending and lifting weights averaging between 40 and 60 pounds. In December 1954 he suffered an occupational back injury and was off work for 4½ months. For the next six years, while still technically assigned to the Woodworking Shop, he worked primarily for the Electronics Shop, doing strenuous bending and lifting, but no climbing, and no work aboard ship. During 1960 he was returned to shipboard work (including climbing) and in October 1960 suffered a recurrence of his back injury, staying off work in an inactive duty status for more than two months while he underwent out-patient treatment at the Baltimore Public Health Service Hospital. The hospital's report indicated he was fit for light duty, but was to avoid lifting, climbing, and excessive bending. On his return to the job in January he was told there was no "light duty" available, was assigned to shipboard work, and complained that he could not perform this because of his back.

After a number of conflicting physical reports from the shipyard dispensary and the Philadelphia Public Health Service Hospital, the shipyard medical authorities concluded that he was not physically qualified for all the duties of a joiner—specifically, lifting and bending restrictions disqualified him from doing overhead work and climbing a 20-foot scaffold. Efforts to find him work which he could physically perform were not successful, and he voluntarily filed an application for disability retirement on January 23, 1961. None of the shipyard medical personnel supported the application and it was denied by the Bureau of Retirement and Insurance of the Civil Service Commission on April 20, 1961 (with the right to appeal to the Board of Appeals and Review within six months) on the ground that total dis-

ability for useful and efficient service had not been shown. Having been informed that plaintiff did not intend to appeal this decision, the head of the Woodworking Shop recommended in June 1961 that he be separated "due to the physical limitations which restrict him from the performance of the duties of his trade and rate." Piccone then changed his mind and on July 13, 1961, filed an appeal from the denial of his disability retirement application. The Shipyard Commander sent him a letter captioned "Proposed Separation-Disability; thirty-day advance notice of", dated July 21, 1961, notifying him of his planned discharge, to become final after a thirty-day notice period and effective (upon completion of all unused sick leave) on September 14, 1961 (later extended to October 6, 1961), and also advising him of his right to reply or request a hearing within ten days. The letter specifically mentioned his pending disability retirement appeal.

The ten-day reply period passed, but on August 21 Piccone requested that the effective date of his separation be postponed until a decision had been reached on the appeal of his application for disability retirement. The Commander, finding "no compelling reason to retain you on Shipyard rolls beyond the date of proposed separation in order to await the outcome of your disability retirement appeal", informed Piccone on August 25 of the final management decision implementing the proposed separation action. According to Piccone's unrefuted testimony, since his separation from the shipyard in October 1961 he has held various positions involving essentially the same duties as his Navy job.

Plaintiff contacted a lawyer on October 26, 1961, who the next day wrote a letter to the Third Civil Service Regional Office acknowledging that plaintiff's appeal was not within the ten days' limitation of the Commission's rules, but requesting it to accept discretionary review of the pro-

cedural aspects of the dismissal. The following day he filed an appeal with the Secretary of the Navy, which was within the fifteen working-days' limitation for such review, on both procedural and merits grounds.

On November 9, 1961, the Third Civil Service Regional Office refused to consider the untimely appeal from the decision to remove plaintiff, and this ruling was affirmed by the Board of Appeals and Review on March 20, 1962. About a week before (on March 12, 1962), the Board of Appeals and Review finally rejected plaintiff's appeal from the denial of his application for disability retirement. On August 1, 1962, plaintiff was informed of the Navy Secretary's determination that his separation had been "proper and warranted under the circumstances."

■■■ The Government says, first of all, that Piccone is barred from suing in this court because he did not properly exhaust his administrative remedies when he took an untimely appeal to the Civil Service Commission.[1] We have consistently held that a plaintiff's failure to pursue his administrative appeal rights will bar his claim,[2] and that the Civil Service Commission does not necessarily abuse its discretion in refusing to entertain an untimely appeal.[3] However, the exhaustion requirement is not absolute; a court may in its discretion entertain a case where administrative cures have been excusably overlooked.[4]

One situation in which we have found "unusual circumstances" justifying failure to appeal to the Civil Service Commission is where an employee is offered alternative, mutually exclusive, appeal procedures—one through his own agency and the other through the Commission. We have held that he cannot be faulted for choosing the agency grievance procedure.[5] Piccone was told that he could appeal the procedural aspects of his separation through either the Navy or the

1. This was the ground of defendant's earlier motion for summary judgment which was denied by the court without prejudice by order of April 17, 1964, returning the case to the trial commissioner for further proceedings.

2. E. g., Pine v. United States, 371 F.2d 466, 178 Ct.Cl. 146 (1967); Martilla v. United States, 118 Ct.Cl. 177 (1950); Adler v. United States, 146 F.Supp. 956, 134 Ct.Cl. 200, cert. denied, Baker v. United States, 352 U.S. 894, 77 S.Ct. 131, 1 L.Ed.2d 87 (1956); Gernand v. United States, 174 Ct.Cl. 936 (1966); Hutton v. United States, 154 Ct.Cl. 34 (1961); Monday v. United States, 146 Ct.Cl. 6 (1959), cert. denied, 361 U.S. 965, 80 S.Ct. 594, 4 L.Ed.2d 945 (1960); Bodson v. United States, 158 F.Supp. 948, 141 Ct.Cl. 532 (1958); Henry v. United States, 153 F.Supp. 285, 139 Ct. Cl. 362 (1957); McDougall v. United States, 149 F.Supp. 651, 138 Ct.Cl. 90 (1957).

3. Gernand v. United States, supra; Hutton v. United States, supra; Monday v. United States, supra; Bodson v. United States, supra; Henry v. United States, supra; McDougall v. United States, supra. Plaintiff claims that the Commission acted arbitrarily in refusing to consider his late appeal in view of the circumstances of the case. We disagree; he has shown no reason sufficient to justify his delay in appealing.

4. Adler v. United States, supra; Cuiffo v. United States, 137 F.Supp. 944, 131 Ct.Cl. 60 (1955); Bowling v. United States, 181 Ct.Cl. 968 (1967); Ainsworth v. United States, 180 Ct.Cl. 166 (1967); Mallow v. United States, 161 Ct.Cl. 207 (1963); Cunningham v. United States, 161 Ct.Cl. 82 (1963); Morelli v. United States, 161 Ct.Cl. 44 (1963); Walsh v. United States, 151 Ct.Cl. 507 (1960), cert. denied, Alexander v. United States, 365 U.S. 880, 81 S.Ct. 1029, 6 L.Ed.2d 191 (1961).

5. Cuiffo v. United States, supra; Morelli v. United States, 177 Ct.Cl. 848, 858 (1966); Morelli v. United States, supra, 161 Ct.Cl. 44; Cunningham v. United States, supra; see Adler v. United States, supra.

Commission, but not both, and the merits of the action only through the Navy.[6]

■■■ In the *Cuiffo, Morelli* and *Cunningham* cases, *supra* note 5, the employees were told that review by the Commission of the procedural basis for the adverse action against them would terminate their right to any agency review, effectively requiring them to by-pass the Commission or forfeit their right to any scrutiny of the merits of their cases. The Navy regulations allowed plaintiff to appeal the procedural aspects first to the Commission, and within fifteen days after a final decision there, pursue a Navy grievance appeal on the merits of the action. By appealing to the Commission, he would forfeit only his right to have the Navy review the procedures. Nevertheless, we do not feel that the plaintiff can be held at fault for exhausting one of the alternative administrative appeals. He followed one of the two avenues made available to him,[7] a route which offered review of both procedure and substance. In this way he gave "the executive branch of the Government an opportunity to meet his complaint before resort [was] had to the judiciary" (Bodson v. United States, *supra* note 2, 158 F.Supp. at 950, 141 Ct.Cl. at 537), offered it a chance to settle the matter, to apply its expertise, and to render an administrative decision which "would have been enlightening to a court called upon to interpret the statute and the regulations." Martilla v. United States, *supra* note 2, 118 Ct.Cl. at 180. These are the purposes behind the exhaustion rule, and they have been satisfied here. If the Government wishes all procedural objections to be considered only by the Civil Service Commission, it can so provide. It need not (Doyle v. United States, 158 Ct.Cl. 573 (1962), *cert. denied*, 374 U.S. 839, 83 S.Ct. 1892, 10 L.Ed.2d 1060 (1963)), and in this instance it did not. Plaintiff was never told that he *had* to go first to the Commission (on procedure) and then to the Navy (on the merits). On the contrary, he had every reason to believe that, if

6. Plaintiff's appeal rights, as spelled out in the August 25, 1961, letter of final determination from the Shipyard Commander read in part:

"1. You have the right to appeal this adverse action on procedural grounds either to the Director, Third U.S. Civil Service Region, * * * or to the Secretary of the Navy through the grievance procedure. An appeal to the Civil Service Commission on procedural grounds may be made any time after receipt of the notice of decision but not later than ten (10) calendar days after the effective date of the action.

* * * * *

3. If you elect to appeal to the Civil Service Commission under the foregoing provisions, you may not appeal on procedural grounds to the Secretary of the Navy under the grievance procedure.

4. However, if you elect to appeal to the Civil Service Commission on procedural grounds and the decision of the Commission is adverse, you have the further right to appeal the adverse action taken against you, on grounds of merit only, to the Secretary of the Navy through the grievance procedure

within fifteen (15) workdays after receipt of said decision. * * *

5. If you desire to appeal to the Secretary of the Navy through the grievance procedure without first appealing to the Civil Service Commission on procedural grounds, you must do so within fifteen (15) workdays after the effective date of the adverse action taken against you. Such appeal should be submitted in accordance with the instructions outlined in paragraph 4 above, covering the grounds of merit, and, in addition, should call attention to any procedural deficiency you have noted."

7. That one of the two routes (appeal to the Civil Service Commission) was no longer open to Piccone by the time he decided to go forward does not alter the fact that he fully utilized one of the two methods made available to him by the Government. Although his attorney sought Civil Service Commission review in an attempt to secure for his client all possible remedies, this was denied; as the trial commissioner points out, he did not get two bites at the "procedural-review" apple.

he wished, he could obtain both procedural and substantive review through the Navy channels alone, and need not go at all to the Commission.

We come then to the validity of plaintiff's separation in October 1961 which occurred before the Board of Appeals and Review of the Civil Service Commission had finally determined (in March 1962) that he was ineligible for disability retirement. He claimed before the Navy, and now urges before this court, that his separation violated the provisions of the Federal Personnel Manual and the Navy Civilian Personnel Instructions (NCPI) forbidding separation-for-disability while a disability-retirement application is pending.[8] The former, in discussing Separation-Disability reads in part:

This action is used to separate an employee who is physically or mentally incapacitated for continued service in his position, if he does not meet the service requirements for disability retirement, or if neither the agency nor the employee wishes to apply for disability retirement (see Chapter R–5). Separation-Disability should be postponed in any case until the possibilities of disability retirement have been exhausted. * * *[9]

The Navy Regulations, NCPI 352.4–7, contain the following:

4–7 SEPARATION-DISABILITY

a. Use.

Separation-Disability is the action appropriate to separate an employee who is physically or mentally incapacitated for continued service in his position in the following circumstances:

\* \* \* \* \* \*

(3) he has applied * * * for disability retirement, but the Civil Service Commission has disallowed the claim.

\* \* \* \* \* \*

c. Procedure.

Separation-Disability actions are governed, in general, by the requirements of NCPI 352.5. The following considerations are also for application:

(2) When an employee · * * * has applied for disability retirement, Separation-Disability action will not be initiated until a determination on his application has been made by the Civil Service Commission.[10]

■■ If Piccone's separation was accomplished through the violation of a controlling regulation it was invalid, Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957), and he is entitled to back pay.[11] We hold that the commencement of the separation-for-disability action while his disability-retirement appeal was still before the Board of Appeals and Review of the Civil Service Commission did violate NCPI 352.4–7c(2), *supra*. In the words of that Navy regulation, the separation action was "initiated" before "a determination on his [the employee's] application [was] made by the Civil Service Commission." [12]

8. Piccone persistently raised the issue of his separation during the pendency of his disability retirement appeal—this fact appears on the face of the "Proposed Separation-Disability", was emphasized in Piccone's letter to the Shipyard Commander, was considered by the Commander, was argued in the appeal to the Secretary of the Navy, and, according to the Secretary's letter, was reviewed by him.

9. Federal Personnel Manual, S–1–15, TS 645 (Sept. 17, 1959).

10. Set forth in C[over]. S[heet]. 40 (July 1960); C.S. 79 (July 18, 1961).

11. *See, e. g.,* Hadlock v. United States, 159 Ct.Cl. 52 (1962) (NCPI regulations); Hanifan v. United States, 354 F.2d 358, 173 Ct.Cl. 1053 (1965) (Civil Service Commission regulations); Watson v. United States, 162 F.Supp. 755, 142 Ct.Cl. 749 (1958) (War Department regulations).

12. The trial commissioner felt that this separation violated the Federal Personnel Manual provision, not the Navy's regulation. We do not pass upon the Manual's provision. In particular, we do not *decide whether those portions of the* Manual which are not published in the Federal Register or the Code of Federal

■■ At first glance it might appear contradictory that an employee can be found physically able for disability-retirement purposes, yet so physically unfit as to be ineligible to continue as a government employee. This may well be an unfortunate result, but it is provided for by the present laws and regulations.[13] The Civil Service Retirement Act, 5 U.S.C. §§ 2251(g), 2257(a) (1964) (now 5 U.S.C. §§ 8331(6), 8337(a) (Supp. III 1965–67)), gives disability retirement only to an employee "totally disabled for useful and efficient service in the grade or class of position last occupied [by him] by reason of disease or injury * * * ", if he also has five years' creditable service in the Government. Separation-for-disability is authorized by Civil Service regulations; its purpose is to allow the removal of an employee, who though not totally disabled or possessing enough creditable service for disability retirement, is physically or mentally unfit to perform the duties of his rating, and whose separation would "promote the efficiency of the service." [14] There is therefore the possibility that a person can be too disabled to continue work, but not disabled enough to qualify for disability retirement. Nevertheless, it goes without saying that separation-for-disability, even though otherwise authorized by an employee's condition, cannot be effected if there is lack of compliance with departmental regulations.

■ The Government contends that NCPI 352.4–7c(2), supra, is merely directory, and that even if mandatory, it does not require postponing separation-for-disability beyond the date of an initial decision by the Civil Service Commission on the employee's disability-retirement application. As for the first point, the Navy regulation, implementing the Civil Service Commission's directive, is phrased in mandatory terms. It says that "Separation-Disability will not be initiated" where a disability-retirement application has been filed (emphasis added). The introductory command—"The following considerations are also for application"—while somewhat ambiguous, appears more as a command "for application" than a suggestion "for consideration"; and the surrounding provisions all contain obligatory directions and standards for the agency. For these reasons we read the regulation as mandatory.[15]

■ The Shipyard Commander and the Secretary of the Navy interpreted NCPI 352.4–7c(2) to mean that separation-for-disability must be postponed only until after an initial decision from the Commission's Bureau of Retirement and Insurance. The trial commissioner concluded that this was not an arbitrary interpretation, but we hold that it was wrong. As a general rule we should read a remedial regulation—meant for the benefit of the employee—liberally in his

Regulations have the status of regulations of the Civil Service Commission, binding on it and the agencies, or are merely advisory suggestions of the Commission, not conferring rights upon employees. This is a continuing ambiguity in federal personnel litigation; the courts and all government employees would be much aided by Civil Service Commission clarification as to the intended weight of these directives in the Federal Personnel Manual.

13. See Kleinfelter v. United States, 318 F.2d 929, 931, 162 Ct.Cl. 88, 92 (1963); Seebach v. United States, 182 Ct.Cl. 342, 352–353 (1968), where this court seemed to assume disability for one purpose to be disability for the other.

14. 5 C.F.R. §§ 9.101(a), 2.106(a) (2) (Jan. 1, 1961) (now 5 C.F.R. §§ 752.104 (a), 731.201(g), 339.101 (Jan. 1, 1968)). See also NCPI 352.4–7a (1961).

15. Cf. Nordstrom v. United States, 342 F.2d 55, 169 Ct.Cl. 632 (1965); Aflague v. United States, 309 F.2d 753, 159 Ct. Cl. 80 (1962); Khuri v. United States, 154 Ct.Cl. 58, cert. denied, 368 U.S. 913, 82 S.Ct. 193, 7 L.Ed.2d 130 (1961), in which the language of the regulations, their context, and their subject matter required the conclusion. that they were more directory than mandatory, and that no legal rights flowed from them.

favor, to give him the full measure of protection which the regulation was apparently meant to confer. Here the actual words of NCPI 352.4–7c(2)—"determination on his application has been made by the Civil Service Commission" —do not require or suggest a limitation to an initial ruling or decision by the lower level of the Commission. In ordinary usage "determination" refers to a final decision.[16] Moreover, this regulation was meant to implement the Federal Personnel Manual guidelines (quoted above) which use the language "the possibilities for disability retirement have been exhausted". "Exhaustion" would normally include the employee's appeal rights, within the Civil Service Commission, to the Board of Appeals and Review.

Above all, the purpose of NCPI 352.4–7c(2) shows that it applies equally to the period prior to an initial disability retirement ruling and to the succeeding time up to the final ruling on appeal. The regulation is clearly meant to save a government employee from the awkward position of prosecuting two separate personnel actions at the same time, especially where he may be forced to take inconsistent stands in the different actions because of seemingly contradictory Government positions.[17] By making application to the Bureau of Retirement and Insurance, the employee is urging his total disability; to protect himself from a separation-for-disability action at this time would require him to contend that he was not disabled at all. It is for this rea-

son, we think, that the regulation requires that separation-for-disability be postponed until after a determination of the retirement matter. But after an initial Commission rejection of his application, the employee is in an even greater predicament. At this point the Bureau of Retirement and Insurance, one governmental unit, has determined that he is not disabled; if a separation-for-disability proceeding is commenced, it is because another governmental unit, here the shipyard, is urging that the employee is disabled. He would be required, as Piccone was here, to argue to the Commission that he was totally disabled in order to obtain disability retirement, while trying to convince his employer that he was not physically impaired to such a degree as to make him unfit for work. This leaves him in an untenable trap, creating evidence against himself in both proceedings,[18] if he conscientiously wishes to protect his rights to both job and retirement-annuity. For practical purposes he may well be required to elect whether to appeal the disability-retirement decision or to contest the separation-for-disability action, forfeiting the one or the other. The Navy regulation, it seems to us, was specifically designed to free the employee from this dilemma, and to allow him to pursue his retirement application to its administrative end without having to stultify himself.

In this light, it is no answer to say that the employee is supposed to be telling the truth, not claiming disability or

16. A related regulation, NCPI 770.3–1 (C.S. 53, Dec. 1, 1960) governing the time for initiating a grievance after review by the Civil Service Commission uses this same sort of language—the employee is given "15 working days from date of receipt of the Commission's decision or ruling." To read this provision in the sense of an initial decision is to deprive an employee of his right to full Commission review (including an appeal to the Board of Appeals and Review) or to forfeit his supposed right to utilize the Navy grievance procedure after a procedural review by the Commission.

17. See Seebach v. United States, *supra*, 182 Ct.Cl. at 351, where the Government pointed out the burden on and dilemma of an employee's being forced to contest separation and disability retirement actions at one time.

18. In this case the Government argues that he was not physically able to perform his duties, relying largely on his own statements in the disability retirement application and a duplicate application filed at the Commission's request a year after the first.

not as expediency indicates. The regulation is founded on another premise, and here as elsewhere in the law the individual is loosed from the bonds of having to "convict" himself out of his own mouth. The regulation's core assumption is that there should be no conflicting tugs on the employee as he exhausts his demand for disability retirement.

Furthermore, the employee may not really "know" where the "truth" lies. Take Piccone's situation. It would not be unreasonable for him to be in a quandary about his physical capacity; Public Health Service and shipyard dispensary doctors gave different reports on his condition and physical capability. (He would perhaps be foolish to attempt to find out by his own experiment whether he really could still climb twenty-foot ladders.) He also may not have "known" the essential requirements of his rating; for six years he was able to perform satisfactorily as a joiner, without doing all the specified activities, yet he felt that some of them were beyond his physical capabilities. In addition, he may very well not have known the technical standards for disability retirement, for separation-for-disability, and for non-disability—and the gaps or overlaps in between. All the employee really knows (in the ordinary instance) is that he would like to continue working, that if he cannot do so he wants any retirement annuity to which he is entitled, and that he does not want to be discharged outright without compensation. All he can do is press his case, as best he is able, wherever and whenever the employing agency and the Civil Service Commission require, relying on others in whom the duty is reposed to decide the "truth" concerning his ultimate entitlement.[19]

 These considerations lead us to conclude that the Navy regulation, NCPI

352.4–7c(2), *supra*, requires that separation-for-disability be postponed until after a *final* decision has been made by the Civil Service Commission on an employee's disability-retirement application. This might call upon the Navy to carry disabled employees on the payroll for a longer period of time, especially since applicants were allowed six months in which to seek review by the Commission's Board of Appeals and Review. But the Navy regulations themselves prohibit precipitous action in many situations in order to protect employee rights, and the time likely to be required is not unreasonable. The Civil Service Commission, too, may find some way to expedite review of disability retirement cases, and other means of obviating hardship on the Government may be developed. Cf. Seebach v. United States, *supra*, note 13, 182 Ct.Cl. at 351–352.

 It follows that plaintiff's separation in October 1961 was invalid and that he would normally be entitled to back pay from that date. It could be argued that he is entitled to back pay only for the period from his removal (October 1961) until the time of final Commission action on his disability-retirement application (March 1962), but, since the initiation and prosecution of the removal action squarely violated the Navy regulation, the whole removal proceeding was vitiated and must be treated as void. This has been our consistent practice in comparable cases of invalid removal proceedings.

The Government contends, however, that plaintiff cannot recover because he was not ready, willing, and able to perform his duties during the period for which he asks back pay, and therefore that he has not been harmed by the wrongful separation.[20] The trial com-

19. The agency is required by the regulations to file an application for his disability retirement if it determines that he is entitled to it and he refuses to file an application on his own behalf.

20. *See* United States v. Wickersham, 201 U.S. 390, 399–400, 26 S.Ct. 469, 50

L.Ed. 798 (1906); Seebach v. United States, *supra*, 182 Ct.Cl. 342; Walker v. United States, 179 Ct.Cl. 723 (1967), cert. denied, 389 U.S. 1036, 88 S.Ct. 772, 19 L.Ed.2d 825 (1968); Graves v. United States, 176 Ct.Cl. 68 (1966); Keith v. United States, 174 Ct.Cl. 284 (1966); Everett v. United States, 340

missioner concluded that the facts as to plaintiff's physical condition supplied substantial evidence to support his separation on disability grounds (though the commissioner invalidated the removal for a reason comparable to ours). The commissioner did not specifically rule on the sufficiency of the Government's affirmative defense that Piccone was not able to do his work.

■ We find it unnecessary to consider whether the administrative determination of disability was supportable on the facts. For the period from plaintiff's removal in October 1961 until 30 days after the final determination of the Board of Appeals and Review on March 12, 1962, we think it wholly immaterial whether plaintiff was physically able to perform the duties of his job. It is implicit in the Navy regulation (NCPI 352.4–7c(2), *supra*, that employees will be kept on the rolls until after final Commission determination of disability retirement even though they may actually be disabled in fact. That is the only way in which proper effect can be given to the regulation, as we understand its purpose and scope—and to that extent the regulation carves an exception from the general rule that, in order to recover back pay, an invalidly discharged employee must prove his ability to do the job. We add thirty days because the Navy, if it had followed the proper procedure and initiated the removal proceeding against Piccone after the determina-

tion of the Board of Appeals and Review —immediately after, we assume in the defendant's favor—would have had to wait at least thirty days before actually removing him. During that period it would be irrelevant whether he was in fact disabled or not.[21]

■ As for the time since April 11, 1962, the case must be returned to the trial commissioner for a finding as to plaintiff's physical capacity to do his job. In considering this issue the trial commissioner is not at all bound by the administrative determination on disability. See Everett v. United States, *supra*, note 20, 340 F.2d at 355–356, 169 Ct.Cl. at 17–18. The question now before the court is one for the court to decide for itself, as part of its own *de novo* inquiry into damages, and is not to be decided on the basis of the substantial-evidence standard. We are not, on this aspect of the case, reviewing an administrative determination to see whether it can stand. That is a limited type of judicial participation, a second-stage intervention. Now we apply for ourselves, in the first instance, the broad contractual principle which United States v. Wickersham, *supra*, note 20, 201 U.S. at 399–400, 26 S.Ct. 469, 50 L.Ed. 798 and its offspring, have announced. Was the plaintiff physically able to render substantial performance of the duties of his job, or, more generally, was his physical condition such that the Government would have received substantially the *quid pro quo* for which it

F.2d 352, 169 Ct.Cl. 11 (1965); Corrigan v. United States, 153 Ct.Cl. 392 (1961); Armand v. United States, 136 Ct.Cl. 339 (1956); Getzoff v. United States, 109 F.Supp. 712, 124 Ct.Cl. 232 (1953); Simon v. United States, 113 Ct. Cl. 182 (1949).

21. The shipyard actually postponed plaintiff's separation date for an additional four weeks, until he had taken full advantage of his accumulated unused sick leave. However, we do not include this period in the present computation. Apparently, the agency could have placed Piccone on involuntary sick leave at any time during the pendency of the disability retirement application, 5 C.F.R. § 30.803

(Jan. 1, 1961) (now 5 C.F.R. § 630.101 (Jan. 1, 1968)), and we must assume for present purposes that the Government, if it had followed the proper course, would then have done what it had a right to do—have plaintiff use his sick leave prior to the initiation of separation-for-disability proceedings. See Seebach v. United States, *supra*, 182 Ct.Cl. at 351–352. This will not deprive plaintiff of any salary, for he was allowed to take advantage of the sick leave before he was separated in October 1961 and was paid for that period of sick leave.

should have paid him his wages?[22] If we were to limit the inquiry to the reasonableness of the personnel-separation action, the Navy could separate an employee for disability with procedural impunity, so long as there was some support on the merits for the action; this result would frustrate the important objectives of the principle that proper procedures must be followed even in a separation-for-disability.

At a trial on this issue, the plaintiff must ultimately sustain the burden of proving, as part of his claim, that he was ready, willing and able to perform at all times since April 11, 1962, for which back pay is sought. In order to confine this burden within reasonable limits the trial commissioner should require the Government to "demonstrate that it has some concrete and positive evidence, as opposed to a mere theoretical argument, that there is some substance to its [affirmative defense] and is not a mere fishing expedition"[23] or a method of discouraging employees from seeking back pay on meritorious claims because of the cost of proving readiness, willingness and ability to perform since the adverse action. This is a standard we have required for the Government to put in issue a set-off claim in an income tax refund case,[24] and we find it equally applicable here.

Thus, plaintiff should recover his salary (less, of course, any amount earned in other employment) for the time between his removal in October 1961 and April 11, 1962, without further proof—and also since April 11, 1962, provided that he can establish that since the latter date he was ready, willing and able to perform his job. Judgment to that effect will be entered, with the amount of recovery to be determined, in accordance with this opinion, under Rule 47(c).

NICHOLS, Judge (concurring):

I concur in all the points of Judge DAVIS's opinion. However, it reaches its destination without considering, except obliquely, a matter the parties briefed and argued at length. I would prefer to deal with that issue head on, and hereby do so.

Our commissioner, in his report to the court, stated that the Federal Personnel Manual and the Naval Civilian Personnel Instructions were not introduced in evidence during the trial but that judicial notice was taken of them. Referring to certain provisions of the former, he relied on them to show that the action of the Navy was premature and unauthorized insofar as it separated plaintiff for disability while his application for disability retirement was still pending on appeal.

Before us, defendant urges that the cited portion of the Manual was not referred to at the trial or in the party's requests and briefs. It says the Manual does not have the status of a regulation. If defendant had known the commissioner would rely on it, defendant might have produced, its says, expert evidence as to its meaning and intendment. Anyway, defendant urges that the supposed regulation says no more than that the Civil Service Commission would *prefer* that

22. This seems to be the standard we have applied in practice, finding that a determination of 100% disability by the Veteran's Administration is conclusive of inability to perform, in the absence of strong evidence to the contrary, Graves v. United States, *supra*; Everett v. United States, *supra*; Armand v. United States, *supra*, but that lack of efficiency, Seebach v. United States, *supra*; recovery in an automobile tort claim, Keith v. United States, *supra*; refusal to accept a lower paying job, Getzoff v. United States, *supra*; and superior's testimony of unsatisfactory work, Simon v. United States, *supra*; were not sufficient to defeat the plaintiff's claim.

23. Missouri Pac. R. R. v. United States, 338 F.2d 668, 672, 168 Ct.Cl. 86, 91 (1964).

24. See Missouri Pac. R. R. v. United States *supra*; Dysart v. United States, 340 F.2d 624, 169 Ct.Cl. 276 (1965); Zeeman v. United States, 275 F.Supp. 235, 256–257 (S.D.N.Y.1967), *modified on other grounds*, 395 F.2d 861 (C.A.2 1968).

separation action be postponed in the circumstance referred to.

It is possible to adjudicate this case without determining whether the Manual (which is not in the Code of Federal Regulations) is a regulation and whether the involved provision is or is not precatory. The Naval Civilian Personnel Instructions may well be deemed sufficient, for our purposes, and defendant does not challenge our reliance on them, only our interpretation of them. Even if the Manual provision is precatory, it may be considered as support by the expertise of the CSC for a holding that the timing of the Navy action was too arbitrary to stand. Cf. Daub v. United States, 292 F.2d 895, 154 Ct.Cl. 434, 437 (1961). But even so, we ought to notice defendant's point, because it invokes the inherent responsibility of this court for proper conduct of its trials.

Since Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957), it has been commonplace in all Federal courts that agencies are bound by their own regulations in adverse action cases against their employees. This being so, it becomes necessary, in my opinion, to avoid jumping to the conclusion that every piece of paper emanating from a Department or Independent Agency is a regulation. Greenway v. United States, 175 Ct.Cl. 350, n. 5 at 362, cert. denied, 385 U.S. 881, 87 S.Ct. 167, 17 L.Ed.2d 108 (1966). If it is published in the Federal Register and the C.F.R., that would normally indicate it was a rule or regulation and moreover, problems of judicial notice would not exist. If it is not so published, whether it is a regulation would seem to depend in part on its contents and in part on agency intent ascertained by extrinsic evidence.

The Administrative Procedures Act, 5 U.S.C. §§ 1002, recodified as 5 U.S.C. §§ 552 by P.L. 89–554, approved September 6, 1966, provided that Federal Register publication must be given to "substantive rules * * * as authorized by law * * * or interpretations * * * adopted by the agency" for public guidance, but it excepts a matter related solely to the internal management of an agency. It would seem that a document not within the "internal management" exception would be published in the Register and C.F.R. if the agency thought it was a regulation, and non-publication thus affords at least a clue that the agency does not so regard it. The CSC has a large body of material that is published as rule or regulation in 5 C.F.R. Chapt. 1. Some material in the Manual is a counterpart to this C.F.R. material but more is not. The CSC says in Subch. 2–1 of the Manual:

> The Federal Personnel Manual system is the official medium of the Commission for issuing its personnel regulations and instructions, policy statements and related material on Government-wide personnel programs, to other agencies. To make the system a more convenient reference tool, it also includes a certain amount of information about the Commission's organization and procedures, and of material issued by bodies other than the Commission, such as acts of Congress, Executive orders, opinions of the Attorney General, and decisions of the Comptroller General.

Thus is appears that the Manual is not wholly regulation being made up also of instructions, policy statements, and related materials. In Nordstrom v. United States, 342 F.2d 55, 169 Ct.Cl. 632, 638 (1965) we held that an instruction in this Manual was, it seemed, "more directory than a mandatory requirement from which specific legal rights can flow." Whether the regulation portions have their counterparts in the C.F.R., does not appear. The ones our commissioner relied on have no such counterpart.

The Commission further states in Subch. 2–3 that the basic:

> "Manual is written for personnel officers as a group * * *"

The set in our library fills about one and a half shelves, including supplements, and also the volumes of superseded pages which have to be maintained to enable

one to ascertain what the Manual said on any specific past date. It is in looseleaf and continually being modified with new pages. No doubt all this is an essential thread to enable the overburdened personnel officer to find his way through the Minoan labyrinth of Government personnel procedures. The Commission is, or should be, aware the volumes are also much used by lawyers and judges as law books. E. g. plaintiff's attorney in this case stated in oral argument that he subscribes to the "system." They are frequently cited in court opinions, as in two I have recently written for the court, Burton v. United States, 404 F.2d 365, 186 Ct.Cl. —— (Decided December 13, 1968); and Heffron v. United States, 405 F.2d 1307, 186 Ct.Cl. —— (Decided January 24, 1969).

When the Commission wants to make sure that an "instruction" will not be mistaken for a "regulation" and fastened on some Department in a Service v. Dulles decision, it knows how to do so, as witness Manual, Chapt. 752, Subch. 2–3a (1):

> It is usually best to deliver a notice to the employee personally and, if possible to obtain his written acknowledgment of its receipt.
>
> (2) * * * If the agency relies on the mails, it probably is assuming an unnecessary risk.

No court is going to say, I suppose, the Government is "bound by its own regulation" to effect notice of separation action to employees by service in hand, not by mail. But similar care is not always taken, nor can one expect it to be everywhere in such a behemoth of a book. Whence arises the controversy in the instant case and wherein, no doubt, is the seed for many others. In view of the position taken by defense counsel in this case, I deem it urgent that the Commission clarify its intentions about the Manual. A regulation is one kind of law, and like any other kind, the intent of the promulgating authority is a crucial factor, if ascertainable. The Supreme Court in deciding whether a HUD pronouncement is precatory or a regulation, has

just now attached great weight to statements by HUD officials as to what they intended. Thorpe v. Housing Authority of City of Durham, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (Decided January 13, 1969). This is a matter directly related to the administration of justice right under our noses.

The same observation applies to other Government Manuals and Handbooks that have been or may be used in court as sources of "regulations" by which the defendant is bound. Khuri v. United States, 154 Ct.Cl. 58, 64, cert. denied, 368 U.S. 913, 82 S.Ct. 193, 7 L.Ed.2d 130 (1961), is an example of language in such a Manual held not to constitute a regulation.

As long as the possibility remains of mistake as to the intentions of the Commission or other issuing agency, I think certain precautions ought to be observed before any judge or trier of fact concludes that a document not published in the Register is a regulation and that he should take judicial notice of it. If one party asks him to do this, and the other does not object, I suppose the basic problem vanishes, though in that case I think the requesting party should furnish or be ready to furnish the entire document, not just selected excerpts, and the whole should be studied with care so that its true character is clearly understood. If the whole is too voluminous, as e. g. the Postal Manual in Burton, supra, at least the whole of any relevant chapters should be furnished. If the idea of citing such material comes from a source other than the parties, I think the parties should be informed of what is contemplated, so they can submit anything they have on whether the supposed regulation is a regulation. (Clearly, too, the habit of constantly substituting new loose-leaf pages makes it important for the trier of fact to have the assurance the defendant is best able to supply, that the version he has before him is the one that was in effect on the pertinent date.) Defendant here says it might have submitted "expert evidence" as to "meaning and intendment." I do not know exactly what

defendant means but I can visualize evidence that would have been competent. An agency interpretation of its own regulation is accorded "due respect." Baldwin v. United States, 175 Ct.Cl. 264, 269 (1966), *cert. denied*, 385 U.S. 1014, 87 S.Ct. 725, 17 L.Ed.2d 550 (1967). If the contrary were not so entrenched, I would urge that judicial notice never be taken of putative regulations not published in the Register, but that they always be matter of fact for proof as fact, as indeed is done in a portion of our trials. In *Greenway, supra.* n. 5, 175 Ct. Cl. at 362, Commissioner Gamer refers to a Handbook not being in evidence as one reason for not noticing it. As things are I occupy a median position, only urging that in taking judicial notice certain precautions should be observed. If it had been necessary to the decision of this case to know whether the portion of the Federal Personnel Manual relied on by the commissioner was a regulation, I would have favored return of the case to him for trial on the point.

## CONCLUSION OF LAW

The court concludes as a matter of law that plaintiff is entitled to recover on his claim and judgment is entered to that effect, in accordance with the opinion, with the determination of the amount of recovery to be reserved for further proceedings under Rule 47(c).