Stanislaw M. **LECH**

v.

The **UNITED STATES.**

No. 316–67.

United States Court of Claims.

April 11, 1969.

Stanislaw M. Lech, pro se.

Edward Weintraub, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

COLLINS, Judge.

Plaintiff was employed as a bindery worker by the United States Government Printing Office (GPO). On September 3, 1964, plaintiff filed a complaint with the President's Committee on Equal Employment Opportunity, alleging that he had been discriminated against in promotion selection and, because of his physical condition, in the nature of the tasks assigned to him. The basis for this discrimination was allegedly plaintiff's national origin (Polish). After investigation, the Public Printer and, on appeal, the Civil Service Commission (to which the case was referred by the President's Committee) found plaintiff's contentions to be without merit.

Beginning on May 17, 1966, approximately 2 weeks after his discrimination appeal was denied, plaintiff failed to report to work for medical reasons. After 3 hours on June 30, 1966, all of plaintiff's accumulated sick and annual leave time was exhausted, and plaintiff was then placed in a "leave without pay" status.

Because earlier medical advice indicated that plaintiff was suffering from an arterial disease and was unable to continue working as a bookbinder, the GPO on August 30, 1966, offered plaintiff a clerical position as an alternative to disability retirement. Plaintiff not having accepted the offer, the agency on September 23, 1966, applied to the Civil Service Commission for an involuntary retirement of plaintiff for disability. The Commission allowed the application on February 2, 1967, after a hearing, and plaintiff was separated on February 28, 1967.

Plaintiff did not accept compensation through the Commission under the Retirement Act. Instead, he sought and received disability payments from the Bureau of Employees' Compensation, Department of Labor. These payments were made retroactive to the time when plaintiff was placed in a "leave without pay" status on June 30, 1966.

Plaintiff alleges that the action taken on his discrimination complaint was improper because he was denied a hearing before the President's Committee. He further argues that GPO, in placing him in a "leave without pay" status, effected an adverse suspension which was procedurally defective for failure to give him 30 days' notice. Plaintiff also believes that the invalidity of the alleged suspension infected the disability retirement action by GPO before the Commission.

An additional element of plaintiff's case was originally a challenge to the legality of a 3-day suspension he had received for failure to follow instructions. Defendant has chosen not to contest this allegation, and plaintiff is entitled to recover thereon.[1]

---

1. Defendant's calculations, to which plaintiff has not objected, indicate that plaintiff is entitled to a sum of $93.80. This figure is reached by multiplying plaintiff's hourly wage ($4.18) times the 24 working hours of the suspension, less

The case is before us on the parties' cross-motions for summary judgment. There is no dispute of material fact. Plaintiff is to be complimented for the able presentation of his case pro se. However, with the exception noted regarding the 3-day suspension, it is our opinion that, as a matter of law, plaintiff has not established his right to recover.

In regard to plaintiff's discrimination action, we conclude that plaintiff was not entitled to a hearing before the President's Committee. The applicable regulations provide clearly that a hearing is to be held before the agency involved, unless the Committee's Executive Vice Chairman considers it "necessary or appropriate" to assume jurisdiction of the case.[2] When the Public Printer made the initial finding of no discrimination, plaintiff and his then counsel were informed of the right to an agency hearing. Plaintiff chose to appeal directly to the Committee, which subsequently delegated its authority to the Civil Service Commission. Repeated requests for a hearing before the Committee were denied, with an explanation of the proper procedure. Several time extensions were granted plaintiff to permit him to seek a hearing before the GPO. Plaintiff did not avail himself of these opportunities. From a review of the record, we find no evidence of abuse of discretion by the Executive Vice Chairman in denying the request for a hearing before the Committee, nor any other procedural error in the administrative processing of the complaint.

We note from the record that plaintiff had earned a bachelor's degree from American University in addition to the degrees he had received in Europe. It is understandable that plaintiff, with his superior education, might feel that his talents were not being fully used, and that he was entitled to a supervisory position. The record indicates, however, that promotion in plaintiff's branch of the GPO was predicated as much on superior craftsmanship as on other considerations. It is regrettable that plaintiff did not find a position within the Government more suited to the application of his skills acquired through education.

Plaintiff's second contention is that he was illegally suspended when placed in a "leave without pay" status. According to plaintiff, before the agency could place him in the mentioned status, he was entitled to 30 days' notice of the proposed action under Part 752 of the Civil Service Regulations[3] and under section S10–10 of Supplement 831–1 to the FEDERAL PERSONNEL MANUAL.[4]

Even if we assume for purposes of argument that plaintiff should have been given 30 days' notice under the applicable regulations, the administrative procedural error would not entitle plaintiff to recover, since he was not able to work. Everett v. United States, 340 F.2d 352, 169 Ct.Cl. 11 (1965), is analogous to the instant case. The court therein found

---

6.5 percent of the total ($100.32), or $6.52, as a retirement deduction.

2. 5 C.F.R. §§ 1401.19, 1401.22, 1401.23, 713.216 (1968) ; see 5 C.F.R. §§ 1401.16, 1401.17, 713.214, 713.224 (1968).

3. 5 C.F.R. pt. 752 (1968). The specific section is 5 C.F.R. § 752.202(a) (1968) : "(a) *Notice of proposed adverse action.* Except as provided in paragraph (c) of this section, an employee against whom adverse action is sought is entitled to at least 30 full days' advance written notice stating any and all reasons, specifically and in detail, for the proposed action."

4. "S10–10. EMPLOYEE'S STATUS PENDING ACTION ON FILED-BY-AGENCY APPLICATION

"The employee's status as an employee is not affected by the act of his agency in applying for his disability retirement. Pending decision on the application, his employment status is determined under the normal rules for employees; for example, if it is necessary to place an employee on leave without pay without his consent, the agency must follow the requirements of part 752 of the civil service regulations. As a matter of policy, the Commission believes it preferable that the employment status not be terminated while its decision on the application for disability retirement is pending."

that plaintiff had in fact been illegally discharged, but that his inability to work precluded recovery of the difference between the salary he would have received during the claim period and the disability retirement payments he had received. This has long been the rule in this court. Walker v. United States, 179 Ct.Cl. 723 (1967), *cert. denied,* 389 U.S. 1036, 88 S.Ct. 772, 19 L.Ed.2d 825 (1968); Graves v. United States, 176 Ct.Cl. 68 (1966); Keith v. United States, 174 Ct., Cl. 284, 287–288 (1966); Corrigan v. United States, 153 Ct.Cl. 392 (1961); Armand v. United States, 136 Ct.Cl. 339 (1956).

In the instant case, plaintiff has not argued that he was able to work during the period after June 30, 1966. In fact, it was admittedly for medical reasons that he initially absented himself from work. Plaintiff has not challenged the Civil Service Commission's subsequent findings of disability and incapacity to continue as a bookbinder. On the other hand, plaintiff did apply for and accept a 75 percent disability pension from the Department of Labor. We find nothing in the record sufficient to support a conclusion that plaintiff was able to work. See Everett v. United States, *supra.*

Finally, plaintiff asserts, perhaps belatedly, that the disability retirement proceeding brought by GPO is invalid, apparently upon the assumption that the alleged illegality of the change in plaintiff's status to "leave without pay" infected the subsequent action. However, the two actions were entirely separate. Under either plaintiff's or defendant's theory of the case, plaintiff was still an employee of GPO at the time of the retirement action. It is quite clear that the GPO had the right to initiate an involuntary retirement proceeding. 5 U.S.C. § 2257(a) (1964), *as recodified;* McGlasson v. United States, 397 F.2d 303, 184 Ct.Cl. 542 (1968). If plaintiff is suggesting that this action by the agency was a continuation of a pattern of discrimination, he has not indicated anything in the record that would support such an inference, and we find nothing. Plaintiff has not alleged any procedural illegality, misconstruction of the governing law, or other vital error in the retirement proceedings, and we therefore cannot disturb the findings of the Commission. Scroggins v. United States, 397 F.2d 295, 184 Ct.Cl. 530, *cert. denied,* 393 U.S. 952, 89 S.Ct. 376, 21 L. Ed.2d 363 (1968); McGlasson v. United States, *supra;* Gaines v. United States, 158 Ct.Cl. 497, *cert. denied,* 371 U.S. 936, 83 S.Ct. 309, 9 L.Ed.2d 271 (1962).

For the above reasons, plaintiff's cross-motion for summary judgment is granted with respect to his claim for the 3-day suspension, and judgment is entered for plaintiff on that claim in the amount of $93.80. In all other respects, plaintiff's cross-motion is denied. Since defendant did not contest the 3-day suspension, its motion for summary judgment is granted in its entirety, and all claims of the petition except the abovementioned one are dismissed.